REPLOGLE *v.* LITTLE ROCK.

Opinion delivered November 10, 1924.

1. CONSTITUTIONAL LAW—RESTRICTION OF OCCUPATION.—A statute, or municipal ordinance enacted pursuant thereto, which restricts the right to engage in the occupation of plumbing, must find justification in the fact that such statute or ordinance is necessary to promote the general welfare.

2. CONSTITUTIONAL LAW—DOUBTS AS TO CONSTITUTIONALITY.— When statutes and municipal ordinances pursuant thereto have been enacted purporting to protect the health and welfare of the community, all doubts as to the constitutionality of such legislation must be resolved in its favor, unless it appears that the statute or ordinance is clearly outside the scope of the organic law, which is over all departments of the government.

3. CONSTITUTIONAL LAW—POLICE POWER.—The occupation of plumbing peculiarly affects the public health, and it is within the State's police power to regulate the manner in which it shall be conducted.

4. CONSTITUTIONAL LAW—REGULATION OF PLUMBING.—Acts 1911, No. 285 (Crawford & Moses' Dig., §§ 7621-7637) providing for municipal boards of plumbing examiners and regulating the occupation of plumbing, is unconstitutional, in that it contains no provisions prescribing the manner in which cities shall regulate the plumbing department, and allows them to adopt arbitrary tests having no relation to the preservation of the public health.

5. CONSTITUTIONAL LAW—TEST OF CONSTITUTIONALITY.—The constitutionality of an act must be tested, not by what has been done under the act, but by the power actually conferred and what might be done under the act.

6. CONSTITUTIONAL LAW—MUNICIPAL REGULATION OF PLUMBING.— While municipal corporations, under the general welfare clause (Crawford & Moses' Dig., § 7494), may require those who pursue the avocation of plumbing to perform their work in such manner as not to endanger the public health and safety, they have no power under that statute to prevent any one from engaging in that avocation or to place restrictions upon them, so long as their work is not done in a manner detrimental to the public welfare.

7. STATUTES—PARTIAL INVALIDITY.—Provisions of Acts 1911, No. 285 (Crawford & Moses' Dig., §§ 7624-7637), relating to plumbers' examining board, its powers and duties, are not separable from the remainder of the act, so that the act is void as a whole.

Appeal from Pulaski Chancery Court; *Verne McMillen,* special Chancellor; reversed.

*Gus Fulk* and *Martin K. Fulk,* for appellant.

1.   The statute regulating plumbing is void, as being offensive to the Fourteenth Amendment to the Constitition of the United States.  It does not necessarily follow that, if the matter of plumbing affects the public health, it constitutes a proper subject for the exercise of the police power.  There is here a reason sufficient to prohibit the exercise of that power, viz., the inalienable right of a citizen under the Fourteenth Amendment. The act in question provides for a board which may make its own rules and regulations, and, under such rules and regulations, it is possible, in the discretion of the board, to make the examination as rigid as is imaginable —may even require an applicant to exhibit expert knowledge; in short, require of him not only to be a plumber, but also a sanitary expert.   The Legislature cannot delegate to a board a greater authority than possessed by itself. Cooley on Torts, 277; 1 Tiedeman on Federal Control of Persons & Property, 236; 74 N. Y. 515; 111 U. S. 746, 4 Sup. Ct. Rep. 652; 42 Wash. 237, 84 Pac. 815, 5 L. R. A. (N. S.) 674; 144 N. Y. 529, dissenting opinion of Mr. Justice PECKHAM, 27 L. R. A. 718; 39 N. E. 686; 198 U. S. 45, 49 L. ed. 937, 25 Sup. Ct. Rep. 539.

2.   A statute which punishes as a misdemeanor the violation of rules to be made by a board of examiners is an unlawful delegation of authority, and is too broad, indefinite and uncertain to be sustained.  144 U. S. 677; 116 Fed. 650; *Id.* 654; 146 Fed. 306; 170 Fed. 205; 45 Ark. 158, 164; 138 Ark. 137.

3.   A municipality has no extraterritorial jurisdiction, and cannot confer such jurisdiction upon a municipal board. The ordinance provides that "said board of examiners * * * shall have jurisdiction coextensive with the corporate limits *and the board of health,*" yet another ordinance of the city provides that the jurisdiction of the board of health shall extend for one mile beyond the

city limits for all purposes except quarantine purposes, and for the latter purpose, in case of epidemics, five miles beyond the city limits. 130 Ark. 334.

*Boyd Cypert* and *Carmichael & Hendricks*, for appellee.

The ordinances as passed were authorized by the statute, act 285, Acts 1911, C. & M. Digest, §§ 7624-7637, and the rules provided by the board must be adopted by the city council before they are effective, and that has been done in this case. It is not a rule of the board, but an ordinance we are considering. In testing the validity of the statute, all doubts must be resolved in favor of the legislative enactment. 85 Ark. 470; 204 U. S. 311; 88 Ark. 354, 5th syllabus; 127 Ark. 38. The decided cases are clearly against appellant's contention that the act is unconstitutional, save only the case of *State v. Smith,* 42 Wash. 237, upon which appellant relies. Many other State have passed upon the validity of such acts, and in every instance their constitutionality has been sustained. 225 Ill. 536; 80 N. E. 341; 8 L. R. A. (N. S.) 1118; 72 Md. 464, 8 L. R. A. 551; 144 N. Y. 529, 27 L. R. A. 718; 58 O. St. 599, 41 L. R. A. 689; 211 Pa. 561; 101 Wis. 172; 96 S. W. 774; 90 Minn. 474. Certainly legislation controlling plumbers is more clearly within the police power than similar legislation pertaining to public accountants, yet such legislation has been sustained. 27 A. L. R. 1528. And similar legislation pertaining to barbers. 20 A. L. R. 1109. And other professions in this State. 88 Ark. 352; 85 Ark. 396; *Id.* 464; 52 Ark. 228; 77 Ark. 506; 59 Ark. 513; 95 Ark. 514. Appellants, in contending that they cannot be punished for violating a rule or regulation of the board, overlook the fact that the statute provides that all such rules and regulations must be adopted by the city council before becoming effective. C. & M. Dig., § 7629. Even if the ordinance giving to the board jurisdiction "coextensive with the corporation limits and the board of health," and the ordinance defining the jurisdiction of the latter be held as extraterritorial, the former

would be void only as to persons living between the city limits and a mile beyond,—and there has been no effort to show that appellants have been arrested for practicing plumbing beyond the city limits.

WOOD, J. Sections 7624 to 7637, inclusive, of Crawford & Moses' Digest contain the provisions of act No. 285, approved May 26, 1911, of the Acts of the General Assembly of 1911, regulating plumbing in cities of the first and second classes. Act No. 285, p. 276, Acts of 1911. The act provides that there shall be, in every city of the first and second classes in this State, a board of examiners of plumbers, consisting of four members, two of whom shall be master plumbers and two journeyman plumbers, to be appointed by the mayor and approved by the council. No person shall be a member of this board unless he has served a regular apprenticeship and worked as a practical journeyman for a period of five years or more. The board is given power to examine all applicants as to their knowledge of plumbing, house drainage and plumbing ventilation, and, if satisfied of the competency of the applicant, the board shall issue to each applicant a certificate authorizing them to work at the business of plumbing. The board is authorized to formulate rules regulating the work of plumbing and drainage, such regulations to include materials and workmanship and the manner of executing the work connected with plumbing and drainage. The board, from time to time, may alter such rules. It is made unlawful for any person to work in the capacity of a journeyman plumber or to install plumbing fixtures or materials unless he shall first obtain a certificate of competency, and any person violating any of the provisions of the act and any of the rules or regulations established under the authority therein designated, shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than $5 nor more than $50 for each and every violation of the act, and, in addition, have his certificate revoked by the board of examiners.

The city council of the city of Little Rock, a city of the first class, passed ordinances pursuant to the act,

creating a board of examiners of plumbers and prescribing its powers and duties. The jurisdiction of the board of examiners was to be coextensive with the corporation limits and one mile beyond, for all purposes except quarantine purposes, and for quarantine purposes, in case of epidemic, five miles beyond such limits. One of the duties of the board was to examine applicants for plumbers' certificates as to their knowledge of plumbing, plumbing ventilation, and house drainage, both practically and theoretically, and, if satisfied as to the competency of such applicants, to issue to them certificates to do plumbing. The board was to receive, as compensation for their services, fifty per cent. of all the examination fees, and each applicant was required to pay the sum of $5 before an examination could be had. The ordinances authorized the board of examiners to formulate a code of rules regulating plumbing and drainage and to amend or alter such rules from time to time. The ordinances created the office of chief plumbing inspector, prescribing his qualifications, duties and compensation. He was to preside at all meetings of the board of examiners, assist in the formation of rules and regulations, and inspect all plumbing and drainage, and secure the proper performance of the work, and, in case he found the same satisfactory, to issue a certificate upon the payment of certain fees for inspection, as prescribed by the schedule set forth in the ordinances.

It was provided that the plumbing department should be under the supervision of the board of health. Among other things, the ordinances provided that any person working at the business of plumbing, or installing or placing any plumbing fixtures or material, without having first received a certificate from the board of examiners, shall be deemed guilty of a misdemeanor and fined a sum not less than $5 nor more than $50.

G. W. Replogle, for himself and others similarly situated, instituted an action in the chancery court, setting up that they were plumbers, and had practiced their vocation in the city of Little Rock and vicinity for many

years; that they desired to pursue their vocation without the certificate required under the rules established by the board of examiners under the act and ordinances above set forth. They alleged that they instituted this action against the city of Little Rock and the chief inspector of plumbing; that, for various reasons, the act and ordinances passed in pursuance thereof were unconstitutional, and they prayed that the city of Little Rock and the chief inspector of plumbing be enjoined from enforcing the same.

The allegations of the complaint as to the invalidity of the statute were denied in the answer, and the cause was heard upon the pleadings, the evidence adduced, and the act and ordinances passed in pursuance thereof. The court held that the act and ordinances were valid, and entered a decree dismissing the complaint for want of equity, from which decree is this appeal.

Under our State and Federal Constitutions all men have the inalienable right to acquire, possess and protect property and to pursue their own happiness, and of these sacred rights no man can be deprived without due process of law. Article 2, § 2, Constitution of Arkansas 1874; Amdt. 5, Const. of U. S.; Amdt. 14, § 1, Const. of U. S. Any statute, or municipal ordinance enacted pursuant thereto, which challenges the right of any person to engage in the legitimate and honest occupation of plumbing, without restraint or regulation, must find its justification in the fact that such a statute or ordinance is necessary to promote the general welfare. No individual can be deprived of the right to pursue his happiness in his own way, and to engage in honest toil in any avocation and in any manner he sees proper, in order to make a living for himself and those who may be dependent upon him, so long as he does not use such right in a manner to injure others. So long as the individual does not transcend this bound, his conduct is not subject to police regulation. Police power can only be exercised to suppress, restrain, or regulate the liberty of individual action when such action is injurious to the public wel-

fare. When statutes, and municipal ordinances pursuant thereto, have been enacted purporting to protect the health and welfare of a community, all doubts as to the constitutionality of such legislation must be resolved in its favor. Such deference and consideration must be given by the courts to the Legislature, a coordinate department of the government, as not to unduly inter- fere with its supreme legislative power, and never to interfere with such power unless it appears that the exercise is clearly outside the scope of the organic law, which is over all departments of the government, and which all are bound to observe as fundamental in the protection of the liberty, happiness, and general welfare of the community. *Williams* v. *State,* 85 Ark. 470; *Dreyfus* v. *Boone,* 88 Ark. 358; *Pierce Oil Co.* v. *Hope,* 127 Ark. 38; *Baker* v. *Walker,* 204 U. S. 311. But, when such enactments are challenged as an invasion of the rights and liberties of the individual guaranteed by the fundamental law, then it becomes the duty of the courts to lay these enactments alongside the Constitution and determine whether the exercise of the police power in the suppression or regulation of ordinary occupations, trades, or callings, is really necessary for the public good.

Judge Cooley says: "It is an important part of civil liberty to have the right to follow all lawful employ- ment." Cooley on Torts, 277; Mr. Tiedeman says: "No man's liberty is safe if the Legislature can deny him the right to engage in a harmless calling." 1 Tiedeman on State & Federal Control of Persons and Property, 236. Mr. Justice BRADLEY, speaking for the United States Supreme Court in *Butchers, etc. Co.* v. *Crescent City Co.,* 111 U. S. 746, says: "The right to follow any of the common occupations of life is an inalienable right. * * * The right to follow any of the ordinary callings of life is one of the privileges of a citizen of the United States."

These general observations are indeed but an announcement of axiomatic rules of law under our

coordinate department system of government, and but the declaration of the personal rights, guaranteed by our State and Federal Constitutions, which are recognized generally by the courts of this country. Courts of last resort, however, differ widely as to whether legislation of a similar or kindred nature to that under review is an infringement of the above rights. A majority of the courts that have had under consideration similar statutes have sustained them as a proper exercise of the police power. *Douglass* v. *People,* 225 Ill. 536; *Singer* v. *State,* 72 Md. 464; *People* v. *Warden,* 144 N. Y. 529; *State* v. *Gardner,* 58 Ohio St. 599; *Blitz* v. *Pittsburg,* 211 Pa. 561; *State ex rel. Winkler* v. *Benzenberg,* 101 Wis. 172; *Caven* v. *Colman* (Tex.) 96 S. W. 774; *State ex rel. Chapel* v. *Justus,* 90 Minn. 474; *State* v. *DeVerges,* 27 A. L. R., 1528.

The *rationale* of the doctrine of these cases is that plumbing is an occupation which peculiarly affects the public health, and therefore comes well within the police power of the State to regulate the manner in which it shall be conducted. *People* v. *Warden, supra,* is a leading case. The statute in that case created an examining board of plumbers with power to examine all persons applying for certificates of competency, as employing or master plumbers, to determine their fitness and qualifications for conducting such business and to issue certificates of competency upon a satisfactory examination. The act required the board of examiners to contain the chief examiner of the city sewers and the chief inspector of plumbing of the board of health. It required registration with the board of health, and that the business shall be conducted under rules and regulations prescribed by that board. The act was sustained by a divided court, three of the judges being for affirmance and three for reversal. The opinions for and against the validity of the statute are able and exhaustive of the subject. Judge GRAY, who wrote the opinion upholding the statute, says: "I am not unwilling to concede that the act skirts pretty closely that

border line beyond which legislation ceases to be within
the powers conferred by the people of the State, through
the Constitution, upon its legislative body.'' The opinion
of the dissenting judges was voiced by Judge PECKHAM.
He has stated the reasons why such legislation is invalid
far more cogently than the writer can hope to do, and
we adopt the reasoning of his opinion and the conclusion
reached as our own. Among other things he says: ''The
Legislature might probably provide for a sanitary inspec-
tion of the plumbing work and thus secure a kind of
work, as to its system and sufficiency, which might fairly
be said to tend towards the protection of the health of
the general public. But the trade of the practical
plumber is not one of the learned professions, nor does
such a tradesman hold himself out in any manner as an
expert in the science of sanitation, nor is any such knowl-
edge expected of him, and this act, when practically
enforced, may or may not exact it of him. This board
has the very greatest, and an entirely arbitrary, discre-
tion as to what qualifications it will exact from the appli-
cant. It may make an examination which none but an
expert in sanitary knowledge could pass, or it may make
the examination entirely perfunctory. * * * If it is
intended as an act simply to secure the ordinary capacity
necessary for the prosecution of the trade of a plumber,
it is useless and vexatious, and not a health regulation
in any form. If it exact more, it is an improper addi-
tion to the qualifications of a simple tradesman. This
act permits the greater exaction to be made. * * *
The examination provided for by this act, if conducted
for the sole purpose of discovering the qualifications
of an applicant in regard to those matters which pertain
and are germane to the real and practical trade of a
plumber, will not have the slightest tendency to discover
whether he has also the requisite knowledge to enable
him to act as a sanitary expert. Taking the act as a
whole, it would seem quite apparent that its purpose is
to enable the employing plumbers to create a sort of
guild or body among themselves, into which none is to

be permitted to enter excepting as he may pass an examination, the requisites of which are not stated, and where his success or failure is to be determined by a board of which some of their own numbers are members. In order to be at liberty to exercise his trade as a master plumber, he must pass this examination and become a member of this favored body. It is difficult for me to see the least resemblance to a health regulation in all this. I think the act is vicious in its purpose, and that it tends directly to the creation and fostering of a monopoly. * * * This measure detracts from the liberty of the citizen, acting as a tradesman, in his efforts to support himself and his family by the honest practice of a useful trade, and I think no court ought to sanction such legislation unless it tends much more plainly than does this act towards the preservation of the health and comfort of the public.''

If the act under consideration in the above case ''skirted pretty closely that border line'' beyond which the Legislature cannot go, as conceded in the opinion upholding it, then certainly the act under review in the case at bar passes far beyond the border line, and violates the personal rights guaranteed by the provisions of both the State and Federal Constitutions above referred to. The New York statute required that the chief examiner of city sewers and the chief inspector of plumbing of the board of health be members of the examining board of plumbers, and contained other provisions which directly connected the board of examiners of plumbers with the board of health. But the statute under consideration contains no such provisions, and there is nothing in all the act to indicate that its primary purpose was to conserve the public health, except the broad provision that the plumbing department, consisting of the examining board, the chief inspector and his deputies, shall be under the supervision of the board of health of said city, and requiring the chief inspector to make a complete report of the plumbing department to the

board of health at the end of each year. The act contains no specific provisions prescribing the manner in which the board of health of cities of the first and second classes shall regulate the plumbing department so as to make that department an efficient instrument for the preservation of the public health. The Arkansas statute contains all the obnoxious features condemned by Judge PECKHAM in the New York law, and more. It requires all applicants who desire to engage in the business of plumbing, either as journeyman plumber, or as master plumber working in the capacity of a journeyman plumber, or any person installing or placing plumbing fixtures or materials, to pass such examination as to his qualifications and competency as the board may prescribe. The examination shall be of such character as to thoroughly test the applicant's ability both practically and *theoretically*.

The power thus vested in the examining board, without any restriction, and without any specification of the knowledge that should be required of plumbers in order to pass the examination, would enable the board, if it so elected, to arbitrarily prescribe *theoretical* tests, with which no applicant could comply, even though he might have perfect knowledge of and be thoroughly skilled in all the practical work of a plumber. The personal rights guaranteed by our State and Federal Constitutions cannot be taken away on theories.

The appellant, Replogle, alleges in his complaint that one of the rules adopted by the examining board requires applicants to submit to a test in wiping lead joints. Sixty per cent. is marked off for failure to meet such test; that wiping lead points is an obsolete practice, and no longer an essential part of a plumber's knowledge, as the board well knew; that this requirement is an unjust, arbitrary and discriminatory condition precedent to the issuance of certificates. He further alleges that he is a practical plumber, well versed and skilled in the art, but that he failed to meet the unfair and arbitrary test required by the board, and was thus wrongfully and illegally denied a certificate.

Whether these allegations were sustained by the proof the record does not disclose, but we refer to them because they serve to illustrate the arbitrary and oppressive power that the board of examiners might exercise to deprive one who is thoroughly qualified to do the practical work of plumbing, of his constitutional right to pursue his avocation, and perhaps his only livelihood, because, forsooth, he was unable to answer some technical or theoretical question not in any sense germane to the real and practical trade of a plumber, and not having even the remotest connection with the actual conservation of the public health. The constitutionality of the act must be tested, not by what the board has actually done, but by the power it actually has. The presumption that public servants will do their duty cannot be indulged in determining whether the act violates the Constitution. It is a question of the power conferred and what the board might do under it, and, to be valid, the act must meet every test required by the Constitution, even the most extreme.

In this connection we desire to quote again from Judge PECKHAM, after he became a Justice of the Supreme Court of the United States. The Supreme Court of the United States, in the case of *Lochner* v. *New York,* 198 U. S. 45, had under consideration an act of the State of New York forbidding employees from working in a bakery or confectionery establishment more than sixty hours in one week. The act had been sustained by the Court of Appeals of New York, the same two judges of the State court dissenting as had joined with Judge PECKHAM in his opinion in the case of *People* v. *Warden, supra.* Speaking for the Supreme Court of the United States, Judge PECKHAM, among other things, says: "It is impossible for us to shut our eyes to the fact that many of the laws of this character, while passed under what is claimed to be the police power for the purpose of protecting the public health or welfare, are, in reality, passed from other motives. We are justified in saying so when, from the char-

acter of the law and the subject upon which it legislates, it is apparent that the public health or welfare bears but the most remote relation to the law. The purpose of a statute must be determined from the natural and legal effect of the language employed; and whether it is or is not repugnant to the Constitution of the United States must be determined from the natural effect of such statutes when put into operation, and not from their proclaimed purpose. The court looks beyond the mere letter of the law in such cases."

Although bottomed on a different statute, we consider that the language above quoted from Judge PECKHAM, speaking for a majority of the Judges of the Supreme Court of the United States, is exceedingly apposite to the case in hand.

In *State ex rel. Richie* v. *Smith,* 42 Washington, 237, the Supreme Court had under consideration a statute like ours regulating plumbing. Judge RUDKIN, voicing the unanimous opinion of the court, after quoting extensively from the opinion of Mr. Justice PECKHAM in the case of *People* v. *Warden, supra,* says: "We have quoted at length from this dissent, because a Federal question is involved and because the views of the learned justices are in accord with our own, and, in our opinion, are shared by a majority of the Supreme Court of the United States, of which he is now a member." Judge RUDKIN concludes his exhaustive and illuminating opinion as follows: "We are satisfied that the act has no such relation to the public health as will sustain it as a police or sanitary measure, and that its interference with the liberty of the citizen brings it in direct conflict with the Constitution of the United States."

The opinion of the Washington court is in harmony with our own views. It follows that the decree of the trial court must be reversed, and the cause will be remanded with directions to enter a decree granting the prayer of the appellant's complaint.

McCulloch, C. J., and SMITH, J., dissenting.

WOOD, J., (on rehearing).   Municipal corporations
have power to make and publish such by-laws and ordi-
nances, not inconsistent with the laws of this State, as to
them shall seem necessary to provide for the safety,
preserve the health, promote the prosperity and improve
the morals, order, comfort and convenience of such cor-
porations and the inhabitants thereof.   Section 7494,
Crawford & Moses' Digest.   Under this "general wel-
fare" clause of our statute, municipal corporations
unquestionably have power to require those who pur-
sue the avocation of plumbing to perform their work in
such manner as not to endanger the public health or
safety.   To this end, municipal corporations have the
power to make and publish by-laws and ordinances pro-
viding for the inspection of plumbing work.   No other
additional authority was necessary to confer such power
upon municipal corporations than that contained in the
general welfare clause of our statute, *supra.*   But the
power to require that the work of the plumber's craft, or
that of any other avocation which men have the common
and natural right to pursue, shall be conducted in such
manner as not to endanger the public health or safety is
one thing, while the power to prohibit individuals from
engaging in such handicrafts and occupations is entirely
another and different thing.   Municipal corporations
have the power to regulate in a proper and reasonable
manner the work done in any common avocation or call-
ing, if it affects the public health and safety.   But they
have not the power to prevent any one from engaging in
these avocations and to place restrictions upon them, so
long as their work is not done in a manner detrimental to
the public welfare.

Now, the statute under review, when taken as a
whole, was intended to prevent any one from engaging in
the craft or business of plumbing until he had been
examined by a board designated "board of examiners of
plumbers," and passed the ordeal or test prescribed by
such board.   The test prescribed by this board, as we

have endeavored to show in the original opinion, could be, and might be, such as to deprive one of the right to engage in the work of plumbing, although well skilled in the practical art of a plumber's trade, because, forsooth, he did not have the knowledge which the board had determined was necessary to constitute one *theoretically, as well as practically,* a qualified plumber. We did not hold in the original opinion that the work of plumbing might not be conducted in a manner to affect the public health or safety. The same may be said of many other avocations which men have the common and natural right to pursue. But that does not justify the enactment of laws or ordinances restricting or prohibiting individuals from engaging in such occupations unless, and until, they have been pronounced qualified, under certain rules and standards prescribed by an examining board. All such infringements of individual rights guaranteed under our laws are unconstitutional and void, because they are infringements of individual rights guaranteed under our Federal and State Constitutions. The monopoly of the plumber's craft which the act under consideration tends to create and foster, would be far more detrimental to the public weal than any sporadic or occasional piece of defective plumbing work.

The provisions of the act relating to the inspection of plumbing are so correlated with the sections relating to the examining board and its powers and duties that they cannot be separated and leave a complete and workable law authorizing the inspection of plumbing, in order that the same may be done in a manner not injurious to the public health or safety. It cannot be presumed that the Legislature would have passed the act as it would appear if the provision creating the board of examiners of plumbers and defining its powers and duties were stricken out. *Ex parte Jones,* 49 Ark. 110; *Oliver* v. *Southern Trust Co.,* 138 Ark. 381; see also *Nixon* v. *Allen,* 150 Ark. 244-50. This court cannot convert the body of the statute under consideration into such a law

without trenching upon the functions of the Legislature. To add on and lop off the necessary and unnecessary parts would require more judicial surgery than this court should undertake. Several sections of the act could be upheld if they were parts of a properly framed inspection law, and such a law could easily be framed, but it is not the province of this court to enter upon the work of enacting such a law. The agreed statement of facts shows that the appellants only violated the ordinance of the city prohibiting them from engaging in the work of plumbing without passing the examination by the board of examiners of plumbers provided for in the ordinance. Since this provision of the act renders the whole act unconstitutional, it necessarily follows that such ordinances as are bottomed upon, or referable alone to, this act, must fall with it. The motion for rehearing is therefore overruled.

McCULLOCH, C. J. (dissenting). It is conceded in the opinion of the majority that the conclusion reached is against the weight of authority. The citations in the opinion show that, with a single exception (the case of *State ex rel. Ritchie* v. *Smith,* 42 Wash. 237), the authorities uphold statutes substantially identical with the one now under consideration. The majority also find support in the dissenting opinion of Judge PECKHAM in the case of *People* v. *Warden,* 144 N. Y. 529. They also cite the decision in *Lochner* v. *New York,* 198 U. S. 45, involving the validity of a statute regulating the hours of labor in bakeshops. If it be conceded that the Lochner case affords any support to the views of the majority, that case has at least fallen into innocuous desuetude in the very court where it was rendered. *Bratton* v. *Chandler,* 260 U. S. 110; *Adkins* v. *Children's Hospital,* 261 U. S. 525. I think we should follow the weight of authority, especially since it is in accord with our own decisions on kindred questions. *Thompson* v. *Van Lear,* 77 Ark. 506; *Williams* v. *State,* 85 Ark. 465; *Burrow* v. *Hot Springs,* 85 Ark. 396; *Dreyfus* v. *Boone,* 88 Ark. 353; *State Med. Bd.* v. *McCrary,* 95 Ark. 511.

I fail to see the force of the argument that the inspection feature of the statute and city ordinance should be stricken down merely because the examination and license features are found to be invalid. The lawmakers sought to protect the health of the inhabitants of cities by regulating plumbing, and there is no reason to believe that the inspection provision would not have been enacted without this other provision. The part of the statute in excess of power can be stricken out and the remainder left intact. *Oliver* v. *C. R. I. & P. Ry. Co.*, 89 Ark. 466; *State ex rel.* v. *Woodruff*, 120 Ark. 406; *Jones* v. *Floyd*, 129 Ark. 185; *Oliver* v. *Southern Trust Co.*, 138 Ark. 389; *Hamby* v. *Pittman*, 139 Ark. 341; *Vietz* v. *Road Imp. Dist.*, 139 Ark. 567; *McClendon* v. *Hot Springs*, 141 Ark. 114; *Davis* v. *Hot Springs*, 141 Ark. 521; *Alexander* v. *Stuckey*, 156 Ark. 692.

Attention is especially directed to the case of *McClendon* v. *Hot Springs, supra*, where a statute was under consideration which provided for a city manager as a public officer, and this court (Mr. Justice WOOD speaking for the court) upheld the partial validity of the statute, even though a part was held to be unconstitutional.

Mr. Justice SMITH agrees with me in these views.