[File No. Cr. 106.]

STATE OF NORTH DAKOTA EX REL. CITY OF BISMARCK, a Municipal Corporation, and C. J. Martineson, Chief of Police of Said City, Relators, v. THE DISTRICT COURT IN AND FOR THE COUNTY OF BURLEIGH IN THE FOURTH JUDICIAL DISTRICT; Honorable Fred Jansonius, Judge Thereof; Charles Fisher, as Clerk of Said District Court, and R. C. Forsythe, Respondents.

(253 N. W. 744.)

400

Opinion filed February 3, 1934.

*Hyland & Foster,* for the application.

*Scott Cameron,* for respondent.

Nuessle, J. Forsythe entered a plea of guilty to a charge of violating an ordinance of the city of Bismarck regulating plumbing. He was given a jail sentence and committed thereunder. Thereupon he petitioned the district court of Burleigh county for a writ of habeas corpus, claiming the ordinance to be unconstitutional and void. The district court issued the writ and he was discharged.

The city of Bismarck insisting that the ordinance in question is constitutional and valid, seeks a review of the action of the district court. To that end the city has applied to this court for such relief as may be appropriate. Forsythe, resisting, challenges the propriety of

the city's attempted review of the district court's action. His contention in that respect is that there is no pathway that leads to a review of proceedings upon habeas corpus; that in such case the disposition of the district court, whether it be denominated an order or a judgment, is final and cannot be reviewed in this court. Counsel for the city, on the other hand, insist that such a review may be had, but confess doubt as to the manner in which it may be obtained. Because of this doubt they have presented to this court simultaneously an attempted appeal from the action of the district court; a writ of error directed to the same end; an application for an original writ of certiorari; and further invoke the exercise of the court's power of superintending control. These several matters were set down for argument at the same time. Counsel for Forsythe appeared and requested that they be considered together and that one brief and argument be submitted to cover all of them. This request was granted and the questions arising will be examined in the light of this presentation.

In the case of Carruth v. Taylor, 8 N. D. 166, 77 N. W. 617, this court held that no appeal lay from a final order of the district court remanding a prisoner in habeas corpus proceedings. This court has uniformly adhered to the rule there enunciated. See State ex rel. Styles v. Beaverstad, 12 N. D. 527, 97 N. W. 548; Re Simonson, 54 N. D. 164, 209 N. W. 211. It is argued that though this be the accepted rule in those cases where a writ has been denied, there is nevertheless a right of appeal on the part of the state where the writ is issued and the applicant discharged. A careful consideration of the reasoning of the court in Carruth v. Taylor, 8 N. D. 166, 77 N. W. 617, supra, where the matter was very fully argued out, and in the several later cases reaffirming the rule laid down in the Carruth Case, impels the conclusion that no right of appeal exists in the one case that does not in the other. And since there has been no legislative dissent from the rule thus laid down in the Carruth Case in all the years intervening since its pronouncement in 1898, we shall not depart from it. We hold then in the instant case that there is no right of review by way of appeal. We hold further that applying the reasoning of the several cases above referred to, no review is possible by way of writ of error. In this connection, see also the following cases cited in the Carruth Case:

People v. Fairman, 59 Mich. 568, 26 N. W. 769; Ex parte Jilz, 64 Mo. 205, 27 Am. Rep. 218. The district court in the habeas corpus proceeding was unquestionably acting within its jurisdiction, so there can be no review of its action therein by certiorari under the provisions of § 8445, Comp. Laws 1913, as amended. See Baker v. Lenhart, 50 N. D. 30, 195 N. W. 16. Accordingly, if there be a review in this case it must be through the exercise of the power of superintending control reposed in this court by § 86 of the Constitution and of which the legislature took cognizance when it enacted § 7339, Comp. Laws 1913.

The exercise of the power of superintending control has been invoked on various occasions heretofore when it was deemed necessary and proper by this court to issue an appropriate original writ in order to afford relief that could not reasonably be obtained in any other manner. See State ex rel. Lemke v. District Ct. 49 N. D. 27, 186 N. W. 381, and State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745, wherein the authorities are exhaustively reviewed; State v. First State Bank, 52 N. D. 231, 202 N. W. 391; State ex rel. Shafer v. Lowe, 54 N. D. 637, 210 N. W. 501; State ex rel. Friend v. District Ct. 55 N. D. 641, 215 N. W. 87. The power of superintending control "enables and requires it (the supreme court), in a proper case, to control the course of litigation in district courts so as to prevent injustice in cases where there is no appeal, or the remedy by appeal is inadequate." State ex rel. Lemke v. District Ct. 49 N. D. 27, 186 N. W. 381, supra. And this power "to exercise superintending control over inferior courts is not affected by the fact that the district court was acting within its jurisdiction." State ex rel. Shafer v. Lowe, 54 N. D. 637, 210 N. W. 501, supra. Consonant with the reasoning of these cases, we hold that if it shall appear to this court that the district court erred in discharging Forsythe on habeas corpus, such action may be reviewed by and through a supervisory writ issued under the power of superintending control conferred by § 86 of the Constitution.

Subsection 27 of § 3818, Comp. Laws 1913, provides that the board of city commissioners shall have power "to license, tax and regulate plumbers and the business of plumbing and to provide the manner in which plumbing shall be done and for the inspection thereof and the manner in which the connection thereof with the sewers and water

mains of the city may be made." Pursuant to the provisions of this section the city of Bismarck enacted ordinance No. 442, known as "The Plumbing Code" providing for the licensing, taxation and regulation of plumbers and the business of plumbing. This ordinance, among other things, provides:

"No person shall engage in the occupation of installing or repairing the pipes, fixtures or other apparatus constituting the plumbing system of any building within the said city of Bismarck without first procuring a license so to do; either as a master plumber or a journeyman plumber, in accordance with the provisions of this code.

"An applicant for license as a journeyman plumber must have had three years' experience as a helper or an apprentice, or be a graduate of a recognized trade school which gives at least a two years' plumbing course. An applicant for such license who has attended a recognized trade school, but who is not a graduate thereof, will be given full credit for the work done by him as a part of the required three years' experience as a plumber's helper or apprentice.

"An applicant for license as a master plumber must have reached the age of twenty-one years, and must have had at least one year's experience as a journeyman plumber, and must show by examination his fitness for the business of a master plumber.

"For the purpose of determining the competency of applicants to engage in or work at the business of plumbing in the city, there is hereby created a board of examiners consisting of the superintendent of the waterworks system of the city, the city engineer and a licensed plumber appointed by the board of city commissioners. The superintendent of the waterworks system shall serve ex officio as chairman of the board. The term of office of the appointive member shall be two years, commencing on the first Monday in May of even numbered years. Two members of the board shall have power to act and a majority vote of the board shall determine all matters coming before it.

"All applications for license shall be made in writing to the city auditor of the city upon a written form prescribed by the auditor, and shall be accompanied by a statement of the training and experience of the applicant as a plumber. When such an application is received it shall be referred by the city auditor to the board of examiners.

"Within fifteen days after such reference, the board, if the applicant

has the requisite training and experience for the license applied for, shall prescribe a reasonable examination of a uniform, fair and impartial nature, determining the knowledge and skill of each applicant as a journeyman plumber to determine his ability to do the work of a plumber in fitting dwellings, and other buildings, tanks, pipes, traps, making taps and connections and installing fittings for the conveyance of water and sewage in connection with the waterworks and sewer systems of the city, and to do all the work required by the ordinances of the city relating to plumbing in the manner prescribed thereby. The board shall prescribe for each applicant as a master plumber an examination of the character prescribed for journeymen plumbers, and in addition thereto shall test his skill to supervise plumbing work required to be done by the ordinances of the city relating to plumbing. If satisfied from his examination of the competency of an applicant to engage in the business designated in his application, the board shall issue to him a certificate of competency. In conducting examinations due regard shall be had by the board for the particular class of work customarily and commonly done by master and journeyman plumber. Provided, that any person who at the time of the taking effect of this code has been engaged in the business of a master plumber within the city of Bismarck for a term of four years next preceding his application for license as a master plumber, and who throughout such time has been licensed as a plumber to this city, shall be deemed fully qualified for such business and a certificate of competency shall be issued to him without examination. Provided further, that if a certificate of competency is denied to any applicant upon examination, such applicant shall not be permitted to take an additional examination for a period of six months from and after the date of the last examination taken.

"A license to engage in or work at the business of plumbing either as a master or journeyman plumber, shall be issued by the city auditor to any person presenting to him a certificate of competency issued by the board of examiners so to do upon the payment by such person to the city of a fee of $10.00. Provided that an applicant for license as a master plumber in addition must file in the office of the city auditor a surety bond in the sum of $1,000 approved by the president of the board of city commissioners, and conditioned substantially that the principal will indemnify and save harmless the city from any and all

loss, claim, suit, or damage direct or consequential, which the city may suffer or sustain by reason of any work done, or any neglect or omission by the principal, or his employees, or the use of improper materials therein; that the work will be fully performed, and that the principal will comply with all ordinances and regulations of the city concerning plumbing, drain laying and water mains and sewers, and will restore to the condition in which the same was found any paving, street, sidewalk, waterpipe, sewer or other property disturbed by him or his agents in and about the employment. By virtue of his license a master plumber may do the work customarily done by journeymen plumbers."

Forsythe is an experienced plumber. He lives in the city of Bismarck. He undertook to ply his trade within the city without first procuring a license as required by the terms of this ordinance. Complaint was made against him on this account and he was arrested, and having plead guilty to the charge was sentenced and committed under the sentence thus imposed. On his application for release under habeas corpus, he contended, as he now here contends, that the ordinance in question was unconstitutional in that it violates the 5th and 14th amendments to the Constitution of the United States, and §§ 1, 11, 16, 20 and 23 of the Constitution of the state of North Dakota. He concedes that under the police power the State through its agency the city has the right to regulate and license the business of plumbing in the interest of the public health. See Com. v. Beaulieu, 213 Mass. 138, 99 N. E. 955, Ann. Cas. 1913E, 1080; Vicksburg v. Mullane, 106 Miss. 199, 63 So. 412, 50 L.R.A.(N.S.) 421; New Castle v. Withers, 291 Pa. 216, 139 Atl. 860, 57 A.L.R. 132; Tacoma v. Fox, 158 Wash. 325, 290 P. 1010. This right is so commonly recognized and the reasoning of the foregoing authorities sustaining it is so generally approved, that it would be a waste of words to do more than cite the authorities. But respondent insists that the ordinance in question transgresses in that it goes beyond the bounds of reasonable regulation and under the guise and pretense of protecting the public health, denies the equal protection of the law, is discriminatory, and tends to create a monopoly. In support of his several contentions, he cites and relies upon the cases of Replogle v. Little Rock, 166 Ark. 617, 267 S. W. 353, 36 A.L.R. 1333, and State ex rel. Richey v. Smith, 42 Wash. 237,

84 P. 851, 5 L.R.A.(N.S.) 674, 114 Am. St. Rep. 114, 7 Ann. Cas. 577. These two cases, however, go the full length and deny the constitutional right of the state in the exercise of its police power to regulate the plumbing business and license plumbers. But, as indicated by the notes in the several reports and by the authorities heretofore cited, they stand practically alone. Moreover, the case of State . ex rel. Richey v. Smith, supra, has been expressly overruled by the Washington court. See Tacoma v. Fox, 158 Wash. 325, 290 P. 1010, supra. And the Replogle Case, 166 Ark. 617, 267 S. W. 353, cites and follows the Smith Case.

The respondent insists that the ordinance in question is class legislation and discriminates in favor of master plumbers and against resident journeymen plumbers and plumbers licensed as such by other cities in the state. It is true that it provides that those master plumbers are exempt from examination who for four years immediately prior to the enactment of the ordinance had been licensed as plumbers within the city of Bismarck. But this is not an unreasonable or unwarranted exemption. The city in the exercise of its police power is concerned in seeing to. it that only those who are competent to pursue the trade of plumber shall be licensed. The purpose of the ordinance in subjecting applicants for license to an examination is to ascertain whether they are competent. Apparently the city had enforced a licensing requirement prior to the enactment of the ordinance here in question. Under the ordinance such a license continuously held for a period of four years prior to its enactment is accepted as evidence of competency. And this is a matter for legislative determination. So far as plumbers who have been licensed in other cities are concerned, the respondent is not in a position to vindicate their rights. He does not show himself to be such an one. But it is not discrimination in an objectionable sense for a board of city commissioners to refuse to accept the licenses of other municipalities within the state as a sufficient proof of the qualifications of the applicants for license under the ordinance. Those applicants who have been licensed in other cities are required to pass examinations not because they are not qualified but because the board of city commissioners does not know they are qualified and requires evidence of the fact. The city is unwilling to accept licenses issued by other cities as such evidence. And there is

good reason for this position. Conditions may and do vary in different communities. Requirements to practice a trade may be wholly different in one place from those essential in another. The police regulations in the several cities may be wholly dissimilar. In fact since under the statute, § 3818, Comp. Laws 1913, supra, the matter is left to the cities, there may be no regulation whatsoever. So, it seems to us, that viewed from any angle, the ordinance operates uniformly upon all in like situation who come within its provisions and there is no ground for the contention that it is discriminatory or unreasonably interferes with the right to exercise a lawful trade or vocation. See State v. Creditor, 44 Kan. 565, 24 P. 346, 21 Am. St. Rep. 306; State v. Vandersluis, 42 Minn. 129, 43 N. W. 789, 6 L.R.A. 119; Ex parte Spinney, 10 Nev. 323.

Respondent further contends that the ordinance is objectionable for the reason that the examining board is not properly constituted since a majority of the members thereof have the power to act and bind the board and such majority would not necessarily consist of men who have any knowledge, theoretical or practical, of the plumbing business. But the ordinance provides that the two members of the board who need not necessarily be plumbers, and concerning whose lack of qualifications complaint is made, shall be the city engineer and the superintendent of the waterworks system. Certainly men occupying these positions must be fully informed concerning the waterworks and sewerage systems of the city. It is reasonable to infer that they will have some practical or theoretical knowledge of the plumbing business. The ordinance provides that the third member of the board shall be a practical licensed plumber and thus the board will have the benefit of his technical knowledge. Furthermore, the members of the board must be presumed to be men who will perform the duties imposed upon them by the ordinance in an impartial and reasonable manner. And, after all, the question as to the composition of the board is for the city commission to determine. Neither is there any merit to the contention that the ordinance is bad because the real motive behind its enactment is to benefit certain favored plumbers, eliminate competition, and create a monopoly, and that these will be the inevitable results of its enforcement. Respondent has made no proof of "unequal and unjust discrimination" in the administration of the ordinance. He predicts

what will happen in the future. He does not show what has in fact resulted. Reasonably enforced we cannot see how it is possible for these claimed consequences to follow. It must be presumed that the ordinance was enacted from proper motives until the contrary is established. "And the rule is general, with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the Acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be, to accomplish that which follows as the natural and reasonable effect of their enactments." Soon Hing v. Crowley, 113 U. S. 703, 28 L. ed. 1145, 5 S. Ct. 730.

The ordinance is also challenged because of its requirement that a surety bond shall be furnished by a licensee. In this behalf it is contended that this requirement results in placing the city in a favored position. We cannot see how this is so. The city is concerned on account of all of its inhabitants in having its water supply pure and uncontaminated and in having proper connections made with its water mains so that the water may remain so. It has an interest in having proper connections made with its sewerage system so there may be no nuisance on account of escaping gases and that the sewage will be properly disposed of. As the owner of the waterworks system, it has a further interest in insuring that there be no excessive leakage and waste on account of faulty connections with the mains. There is still another reason why the city may properly require a bond from those engaged in the plumbing business. The making of water and sewer connections, the laying of pipes and of tile, and generally the carrying on of the plumbing business may, and frequently does, require the opening of trenches, the tearing up of sidewalks, and the obstruction of streets. If proper precautions are not taken by those engaged in any undertaking requiring these things or any of them to be done, the city may become liable in damages for accidents resulting because of negligence with respect thereto. See Grand Forks v. Paulsness, 19 N. D. 293, 123 N. W. 878, 40 L.R.A.(N.S.) 1158; Keller v. Fargo, 49 N. D. 562, 192 N. W. 313; Keller v. United States Fidelity & G. Co. 54 N. D. 449, 209 N. W. 990. A city should leave it to the individuals em-

ploying plumbers or having plumbing done to protect their personal interests by contract as they themselves may see fit. Harrigan & R. Co. v. Burton, 224 Mich. 564, 195 N. W. 60, 33 A.L.R. 142. But a city regulating the plumbing business and licensing plumbers to carry it on may well protect itself by requiring, as this ordinance does, the giving of a bond conditioned as therein required. There is no ground for saying that by so doing a city places itself in a favored position. What we have said above likewise answers the contention that by such a requirement the city is imposing an unwarranted restraint on a lawful trade or occupation. But the respondent further urges that though a city may protect itself by requiring a bond, it places an unreasonable burden upon business by requiring a surety bond which can only be obtained on the payment of a premium. The bond required by the ordinance is not a large one. The premium charged cannot be great. Certainly if the city has a right to require a bond, it has a right to be assured that the bond is a good one and the requirement that it be a surety bond must be presumed to be in order to attain this end. Respondent in support of his contentions in this behalf, cites and relies upon the case of State ex rel. Sampson v. Sheridan, 25 Wyo. 347, 170 P. 1, 1 A.L.R. 955. In that case the ordinance required that one engaged in laying cement sidewalks should procure a license before commencing to exercise his occupation. This ordinance was held unconstitutional and void for the reason that since it applied only to those engaged in laying cement sidewalks and did not apply to those engaged in laying any other sorts of sidewalk, it was discriminatory and constituted class legislation. Further, that it was an unjustifiable and unreasonable police regulation since the business in question had no tendency to affect the safety, health, morals or welfare of the general public. Neither the facts nor the reasoning of the case make it an authority in support of the respondent's position here.

Accordingly, we hold that the ordinance in question is not vulnerable to the constitutional challenges made to it by the respondent, and that the district court erred in discharging him. The case will therefore be remanded for further proceedings conformable to law.

BURKE, CHRISTIANSON and BURR, JJ., concur.

MOELLRING, J., did not participate.