Lee A. **MUNSON**, Prosecuting Attorney of the Sixth Judicial District of the State of Arkansas, Appellant-Petitioner,

v.

Ruth **GILLIAM** et al., Appellees,

Ira Forrester and Hazel Forrester, Intervenors-Appellees,

Ron Moore and Marilyn (Higgins) Moore, Intervenors-Appellees,

The Honorable Terry L. Shell, United States District Judge, Eastern District of Arkansas, Respondent.

No. 76–1657.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1976.

Decided Oct. 20, 1976.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Andrew Weltchek, Little Rock, Ark., for appellees; Kenneth L. Schorr, Little Rock, Ark., on brief.

Darrell D. Dover and Thomas B. Staley of House, Holmes & Jewell, Little Rock, Ark., filed amicus curiae brief for Little Rock and North Little Rock Board of Realtors, Inc.

Before GIBSON, Chief Judge, MARKEY,* Judge, and STEPHENSON, Circuit Judge.

MARKEY, Chief Judge, Court of Customs and Patent Appeals.

This is an expedited interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1) [1] from an

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. § 1292. Interlocutory decisions

 (a) The courts of appeals shall have jurisdiction of appeals from:

 (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

order of the United States District Court for the Eastern District of Arkansas granting plaintiff-appellees' (Gilliam's) motion for a preliminary injunction. We reverse and remand.

### Background

On June 24, 1976, Gilliam filed a complaint, on her behalf, that of four named co-plaintiffs and that of all others similarly situated,[2] under 42 U.S.C. § 1983[3] in the United States District Court for the Eastern District of Arkansas, alleging violations of civil rights, the exercise of which is guaranteed in the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Gilliam specifically alleged a threat of prosecution pursuant to Ark.Stat.Ann. § 50–523 (Repl.1971)[4] (the statute) for having failed to pay rent when due, and that the defendant-appellant (Munson), prosecuting attorney for Arkansas' Sixth Judicial District, was acting unconstitutionally in his manner of enforcing the statute.[5] Gilliam contends that Munson commences criminal proceedings against tenants arbitrarily, without the intent of obtaining convictions under the statute, but to assist landlords in evicting tenants who fail to pay rent. Since 1974, when a Circuit Judge of Pulaski County declared portions of the *civil* eviction statutes of Arkansas[6] to be unconstitutional, tenants in that county have been provided with a right to prior notice and hearing before Writs of Possession can be issued to evict them following a civil action.[7] Gilliam asserts that the criminal statute, as it is being applied, "circumvents" the civil statutes, puts a "chilling effect" on the tenant's right to assert defenses, and forces the tenant to risk criminal conviction and fine as a result of what he may have considered to be a justified refusal to pay rent.[8] On June 25, 1976, a hearing was held on Gilliam's request for a temporary restraining order (TRO) to bar further prosecutions under the criminal statute.

2. The complaint was brought as a class action pursuant to Fed.R.Civ.P. 23.

3. § 1983. Civil action for deprivation of rights
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. Any person who shall rent any dwelling house, or other building or any land, situated in the State of Arkansas, and who shall refuse or fail to pay the rent therefor, when due, according to contract, shall at once forfeit all right to longer occupy said dwelling house or other building or land. And if, after ten [10] days' notice in writing shall have been given by the landlord, his agent or attorney, to said tenant, to vacate said dwelling house or other building or land, said tenant shall wilfully refuse to vacate and surrender the possession of said premises to said landlord, his agent or attorney, said tenant shall be guilty of a misdemeanor and upon conviction thereof before any justice of the peace, or other court of competent jurisdiction, in the County where said premises are situated, shall be fined in any sum not less than one dollar [$1.00], nor more than twenty-five dollars [$25.00] for each offense, and each day said tenant shall wilfully and unnecessarily hold said dwelling house or other building or land after the expiration of notice to vacate, shall constitute a separate offense.

5. The original complaint alleged the unconstitutionality of the statute itself. On July 9, 1976, an amended complaint was filed deleting the direct attack on the statute and substituting the stated contention.

6. Ark.Stat.Ann. 34–1502, 34–1503, 34–1506.

7. *Held v. Boyd*, No. 74–3489, decided Oct. 22, 1974.

8. Two prior lawsuits in the federal district court apparently precipitated by appellee A.C. O.R.N. involving the same allegations were both dismissed. *Williams v. Cowling*, LR–75–C–2, was dismissed on motion of plaintiff by Judge Henley, Jan. 22, 1975; *Burton et al. v. Bowman*, LR–75–C–71, was dismissed on motion of plaintiff by Judge Eisele, April 12, 1976. A.C.O.R.N. (Arkansas Community Organizations for Reform Now) is an unincorporated association of neighborhood groups of low and moderate income Arkansasans, organized for the purposes of neighborhood improvement, and promotion and protection of the welfare and rights of their members and those similarly situated throughout the state.

At the conclusion of testimony, in which defenses to enforcement of the statute were raised by Gilliam, Munson stated to the court that he would not prosecute the *individual plaintiffs* and that he would issue an office directive to that effect. The hearing was adjourned after the court had requested the parties to attempt negotiation of a settlement, and to file additional briefs on five outstanding issues.[9] A stipulation was also filed, containing statistics on the number and frequency of Pulaski County prosecutions under the statute for the period six months prior to March, 1975.[10]

On July 15, 1976, Ira and Hazel Forrester moved to intervene in the case as co-plaintiffs.[11] They stood charged with a violation of the statute and their trial had been set for July 29, 1976. On July 28, Ron and Marilyn Moore also moved to intervene, following Mr. Moore's July 26th arrest for a similar statutory violation. The intervenors' municipal court cases were passed until September at the prosecutor's request and a joint hearing on the intervention motions was held by the District Court on July 30. Munson objected to both interventions, asserting procedural and jurisdictional grounds, and on the grounds of undue

delay and unlawful federal interference with state criminal process.

After the court heard testimony of the intervenors, their landlords, Munson and other employees of the prosecutor's office, the reporter was dismissed and argument on the motions proceeded. Having earlier ruled that it had jurisdiction, the court granted both motions to intervene. During further argument an exchange took place between the court and Munson, the exact nature of which is in dispute.[12] Apparently convinced that criminal prosecutions, in the Arkansas Municipal Court, of plaintiffs and intervenors would proceed before the merits of the present claim could be heard, the court conditionally certified the class and orally enjoined Munson from maintaining any prosecution against any member of the tenant class who asserted any defense. On August 2, 1976, Munson filed an application requesting the court to modify the oral injunction and to stay its effect pending appeal. On August 5 the stay was denied and the court filed a written Order of Injunction, somewhat modified in scope from the oral order.[13] Munson had filed his notice of appeal to this court on August 2, 1976. On August 11, 1976, we granted

9. The remaining issues for briefing were: (1) jurisdiction (one-judge or three-judge panel), (2) standing of A.C.O.R.N., (3) class action certification, (4) federal jurisdiction over Mr. Cooks (a dismissed defendant), and (5) case or controversy requirement.

10. Paragraph (b) of the stipulation reads:

In the six months preceding March of 1975, approximately 858 ten day notices to vacate were served by the Sheriff on tenants in Pulaski County. During that same time, approximately 94 persons have had criminal proceedings instituted against them by Prosecutor Munson for violation of *Ark.Stat.Ann.* 50–523, and approximately 3 were tried.

11. Fed.R.Civ.P. 24.

12. The court in its August 5, 1976 written Order of Injunction recalls the exchange to be:

Mr. Munson: Your Honor, I intend to enforce the laws of the State of Arkansas.
The Court: Does that include prosecuting *the named plaintiffs* to this lawsuit?
Mr. Munson: It includes *everybody*. When these cases which have been passed come up after September 1st I shall prosecute them

unless ordered not to by this Court. (emphasis supplied)

Munson disagrees to the extent that he only remembers stating that he would prosecute the *intervenors* when their trials were scheduled, i. e., that he did not intend to further pass *their* cases.

13. The written Order of Injunction states:

Lee Munson, Prosecuting Attorney for the Sixth Judicial District, is enjoined from prosecuting any member of the above mentioned class for violation of Ark.Stat.Ann. § 50–523 where the potential defendant asserts any civil defense to the allegations of non-payment of rent. It shall be incumbent upon the Prosecutor under the terms of this injunction to investigate any complaint brought to his attention under Ark.Stat.Ann. § 50–523, and such investigation shall include contacting the potential defendant and inquiring of him whether he is in default on rental payments and, if so, whether he has any defense which is cognizable in a civil eviction action. If any such defense is asserted or discovered by the Prosecutor during his investigation, prosecution shall not proceed for the life of this injunction.

Munson's motion to have the matter expedited.

## OPINION

 Our review is limited to the propriety of the District Court's Order of Injunction. Munson has presented several other issues which we find unnecessary to address in view of our decision on the Order of Injunction,[14] and we intimate no opinion respecting such other, unrelated issues. The grant of a preliminary injunction requires a showing of a strong likelihood of eventual success on the part of the grantee and a showing of irreparable harm likely in the absence of the grant. Where, as here, the injunction is designed to control a state law enforcement officer in the performance of his state-mandated duties, the burden on one seeking such injunction is heavy.

The prerequisites to federal equitable intervention in state criminal prosecutions have been very narrowly defined and applied by this and other federal courts. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) the Supreme Court explained the compelling reasons for restraint in this area and concluded:

> [W]e hold that a federal court must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution. Such circumstances exist only when there is a threat of irreparable injury "both great and immediate." 401 U.S. at 56, 91 S.Ct. at 757.

The Court went on to specify some threats that might qualify as "great and immediate."

A threat of this nature might be shown * * * if there has been bad faith and harassment—official lawlessness—in a statute's enforcement * * *. *Id.*

 On the record before us we see no such threat of "great and immediate" irreparable injury. As discussed below, the finding of irreparable harm appears to have been based solely on the disputed exchange with Munson (see footnote 12) which led the court to believe that all appellees would be prosecuted before it could hear the merits of the present controversy. That belief, and the meager evidence offered to show bad faith, upon which the District Court justified its injunction, hardly constitute a sufficient basis for the serious encroachment on state criminal processes involved herein. *Bonner v. Circuit Court of City of St. Louis, Mo.*, 526 F.2d 1331 (8th Cir. 1975) (en banc), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353, *reh. denied*, 425 U.S. 926, 96 S.Ct. 1525, 47 L.Ed.2d 773 (1976). *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). The District Court found ultimate proof of bad faith to be likely in relying primarily on the following factors: (1) the stipulation of facts filed July 25, 1976,[15] (2) Munson's testimony that the only investigation performed prior to trial is the taking of the landlord's affidavit, and (3) several landlords' testimony that the statute was primarily used to evict tenants without the necessity of getting involved in a civil suit. We cannot find, in the record before us, the requisite evidence of bad faith to constitute a showing of likelihood of success, or the requisite evidence of irreparable harm.

14. Munson asserts (1) that the cause more properly lies within the jurisdiction of a three-judge court, 28 U.S.C. § 2281, (2) that the court abused its discretion by allowing the interventions, and (3) that the court lacks jurisdiction as to the individual plaintiffs-appellees. These issues may be resolved, if necessary, more properly on a final appeal on the merits. It is, therefore, also unnecessary to consider the Petition for Writ of Mandamus which Munson incorporated in his appeal.

15. The Order of Injunction states: "In this regard, the Court is particularly impressed with the Stipulation of Facts filed June 25, 1976, wherein it was agreed by the parties that in the six months preceding March of 1975, 858 ten-day eviction notices were served by the Sheriff threatening prosecution, 94 actual prosecutions were begun, but only *three* were ever tried." (court emphasis) There was apparently little if any evidence of the number of settlements, by payment of all or partial rent due, by performance of landlord commitments, or by tenants simply vacating the premises. Similarly, there were apparently no statistics reflecting the number of tenants who vacated because of the cost of asserting a valid defense and the number who vacated because they had no defense.

*Evidence of Bad Faith*

The evidentiary value of the statistics presented in the stipulation, reflecting the number of ten-day notices served versus the number of tenants prosecuted and actually tried (see footnote 10), is extremely questionable at best. Without an understanding of the context and underlying circumstances from which the figures are drawn, the District Court should have attributed little, if any, weight to the mere numbers in the stipulation.[16]

A thorough review of Munson's testimony, as well as the testimony of two para-legals employed by the prosecutor's office, reveals that a landlord is questioned extensively, under oath, on the circumstances surrounding an alleged violation of the statute before a criminal information is prepared.[17] If it is determined that a legitimate dispute exists between the landlord and tenant, appearing to be civil in nature, no information is issued. Though it is possible that failure to question a tenant prior to issuing an information could result in an acquittal when the tenant presents a valid civil defense, such omission can hardly be characterized as "bad faith" or "harassment" or "official lawlessness" on the part of the prosecutor. Clearly an investigation of the tenant's position could be beneficial. Exercise of the prosecutor's investigative responsibilities must, however, be granted a reasonable area of discretion. Thus, the scope of an investigation will vary with the nature and complexity of the alleged crime, local constraints created by limited numbers of deputies and investigators, available funds and other considerations relevant to the efficient administration of the justice system of the state. Absent a finding of "intentional, purposeful conduct motivated by a malicious or discriminatory purpose," a federal court has no authority to interfere in such internal affairs of a state. *Maney v. Ratcliff*, 399 F.Supp. 760, 772 (E.D.Wis. 1975). Whether, prior to issuance of an information, a tenant must be interrogated in every case, in order to verify whether he or she has a "claim of right" to the rented premises, without payment of rent, seems to us a question of state policy.

Testimony of certain landlords was construed by the court to indicate that the statute was used primarily to evict tenants and thereby avoid the use of civil processes which afford the tenant prior notice and hearing. Even assuming that construction to be correct, we do not find justification therein for the present Order of Injunction. The failure-to-vacate statute has been declared by the Arkansas State Supreme Court to be in the public interest. *Poole v. State*, 244 Ark. 1222, 428 S.W.2d 628 (1968). That a tenant who fails, without justification, to pay rent is in effect stealing property from the landlord and should be criminally punished, is a conclusion available to a state under the Constitution. If a valid claim or defense can be asserted by the tenant, a state court is fully prepared to decide the issue. Arkansas law allows for any civil defense to be asserted in a criminal proceeding under § 50–523, thereby giv-

16. As pointed out by Munson during oral argument before us, less than 1% of bad-check cases are actually tried, as are less than 1% of public drunkenness cases. Based on the statistics in the stipulation, prosecution was initiated for about 11% of the persons receiving a ten-day notice under § 50–523, while less than 1% were actually tried. The United States Attorney's Offices Statistical Report for Fiscal Year 1975 (FY75) provides figures for federal courts which are substantially consistent with those in the stipulation. A total of 174,173 criminal complaints were received by all U.S. Attorneys Offices in FY75. In the same period, 46,951 cases were filed and only 5,180 trials were held. Based on these figures, it appears that about 27% of the complaints result in prosecution and only 3% in trial. These statistics are for all types of crimes, but the comparison certainly indicates that Munson's record is not so far out of line with the national averages as to justify an inference of "bad faith" prosecution.

17. After an explanation of his office procedures respecting allegations received from landlords and complaints of other crimes, and of his office policy designed to avoid use of criminal process in what is in fact a civil dispute, Munson testified:

Q. Is it a fair statement then that you require a prima facie case sworn to under the laws of perjury by a landlord that the tenant is willfully not paying rent for no just cause?
A. That's correct.

ing the tenant a fair and sufficient opportunity for hearing. If convicted in Municipal Court, the tenant has a right to appeal to the state Circuit Court in a trial de novo.[18] Further appeal to the Arkansas Supreme Court is also possible, as is state post conviction relief.[19] The state courts are presumed able to protect federal rights and should be afforded the opportunity to do so without unjustified federal interference. *Stone v. Powell*, —— U.S. ——, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 n. 35 (1976). We see nothing on this record to indicate that appellees will not be fully protected by the Arkansas state court and legal processes.[20] *Bonner v. Circuit Court of City of St. Louis, Mo., supra.* Nor do we see any justification for transferring the function of the state courts to Munson which would be the effect of requiring him to determine all defenses prior to issuing an information, as set forth in the Order of Injunction.

### *Irreparable Harm from Possible Criminal Prosecution*

█ The District Court erroneously viewed the possible criminal prosecution of Gilliam, in and of itself, as constituting irreparable harm.[21] That conclusion necessarily rests upon an assumption that Gilliam would not be given a reasonable and adequate opportunity to vindicate constitutional rights in an Arkansas state court. As above stated, the presumption is directly to the contrary. No evidence of record raises the smallest doubt of the capacity of the Arkansas state courts to adequately protect

Gilliam's constitutional rights. The mere prospect of facing criminal prosecution is not *per se* irreparable injury. See *Steffel v. Thompson*, 415 U.S. 452, 463 n. 12, 94 S.Ct. 1209 n. 12, 39 L.Ed.2d 505 n. 12 (1971). We find no prospect of irreparable harm reposing in the possibility of criminal prosecution herein.

### *Ongoing Audit*

The preliminary injunction, as framed, requires "nothing less than an ongoing federal audit of state criminal proceedings." *O'Shea v. Littleton*, 414 U.S. 488, 500, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1974). Some type of federal evidentiary hearing could be demanded prior to every prosecution under the statute. Any tenant who felt that the prosecutor was going forward with a criminal charge against him, without having asked him about a "cognizable" civil defense or without such defense being "discovered" by the prosecutor, could bring the matter into federal court. Such a sharp limitation on the prosecutor's latitude is unwarranted. The present Order of Injunction "would require for its enforcement the continuous supervision by the federal court over the conduct of [Munson] in the course of future criminal trial proceedings involving any of the members of the [appellees'] broadly defined class." *O'Shea, supra* at 501, 94 S.Ct. at 679. Since the class includes *any* tenant residing in the Sixth Judicial District who asserts *any* civil defense to eviction, federal hearings could be

---

**18.** As Munson described in his reply brief, Mr. William Oliver was found guilty in Municipal Court on June 8, 1976, of violating the statute and was fined $230.00. Mr. Oliver chose not to intervene in the present case, but instead sought review by trial de novo in the Circuit Court as provided by Arkansas law. (Ark.Stat. Ann. § 44–509 (Repl.1964)). The District Court in the present case determined that Oliver's appeal could go forward despite the injunction, because he had been tried before the present action was filed and was merely appealing. Mr. Oliver raised a *civil defense* at his new trial and was *acquitted* by the Circuit Court. (emphasis added)

**19.** See Ark.R.Crim.P. 36.1 (Add.1976), Ark.R. Crim.P. 37 (Add.1976).

**20.** Under Arkansas law, a landlord lying to the prosecutor can be prosecuted for false swearing, malicious prosecution, or obstructing government operations. (Ark.Stat.Ann. § 41–2603, § 41–2651, § 41–2802.) The tenant can also bring a civil action for malicious prosecution. *Thrifty Rent-a-Car v. Jeffrey*, 257 Ark. 904, 520 S.W.2d 304 (1975).

**21.** After setting forth the colloquy as quoted in footnote 12, the Order states:

It is apparent from this exchange that the plaintiffs, the intervenors and the class will all suffer *the irreparable harm of criminal prosecution* before this Court can hear the case on its merits. (emphasis supplied)

demanded for the sole purpose of ruling on the nature of a given defense in every case. As the Supreme Court said in *O'Shea, supra,* at 500, 94 S.Ct. at 678 (quoting *Stefanelli v. Minard,* 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951)):

> The objection is to unwarranted anticipatory interference in the state criminal process by means of continuous or piecemeal interruptions of the state proceedings by litigation in federal courts[.]

Prosecutorial discretion, within constitutional bounds, is essential to the proper functioning of the American criminal justice system. That discretion involves a balance between an avoidance of prosecution of the apparently innocent and an assurance of prosecution of the apparently guilty. The various considerations influencing decisions to prosecute or not to prosecute are impossible to anticipate and are not readily amenable to judicial supervision. *Meyer v. United States,* 424 F.2d 1181 (8th Cir. 1970), *cert. denied,* 400 U.S. 853, 91 S.Ct. 92, 27 L.Ed.2d 91. The present Order of Injunction, by holding the threat of a contempt action over every preliminary investigation of Munson into every alleged violation of the statute within the Sixth Judicial District, improperly and without cause invades, if it does not destroy, the discretion required in the performance of Munson's lawful duties. The present Order of Injunction represents, in its ongoing audit ramifications, a severe incursion on the internal operation of the Arkansas criminal justice system impossible to justify on the record before us.

### Conclusion

Because the District Court's findings of likelihood of success and irreparable harm are clearly erroneous, the issuance of the Order of Injunction amounted to an abuse of discretion. Accordingly, the order appealed from is reversed and the case is remanded, with instructions to vacate the Order of Injunction of August 5, 1976 and for further proceedings consistent with this opinion.