Marvin PHILLIPS *v.* Dr. Robert CLARK and Dr. Robert
Bishop

88-71                                     759 S.W.2d 207

Supreme Court of Arkansas
Opinion delivered October 31, 1988
[Rehearing denied December 5, 1988.*]

*Art Dodrill*, for appellant.

*Friday, Eldredge & Clark*, by: *Laura A. Hensley*, for appellees.

DAVID NEWBERN, Justice. This is a medical malpractice case in which a directed verdict was entered in favor of the appellees, Dr. Robert Clark and Dr. Robert Bishop, at the conclusion of the plaintiff's evidence. Marvin Phillips, who was the plaintiff, has appealed. Mr. Phillips's complaint was that the doctors had not properly cared for him after the surgery and that resulted in the necessity of further surgery and long-term medical care. We agree with the trial court's assessment that an expert witness upon whose testimony Mr. Phillips's case depended was not qualified to answer the questions he was asked. There was no other testimony sufficient to allow the case to go to the jury, and thus we affirm the judgment based on the directed verdict.

Mr. Phillips consulted Dr. Robert Bishop in Morrilton about

---

*Purtle, J., would grant rehearing.

severe stomach pain. Dr. Bishop told Phillips he needed a gallbladder operation and recommended a surgeon, Dr. Clark of Conway. Phillips had previously had stomach surgery, and that complicated the gallbladder operation which was performed by Dr. Clark on August 27, 1982. He was discharged from the hospital on September 18, 1982, with a, presumably temporary, tube extending from the surgical incision for the purpose of draining excess bile.

Mr. Phillips testified he saw Dr. Clark once after the surgery and while he was still in the hospital. He told Dr. Clark his "stomach busted loose," and Dr. Clark removed a stitch and remarked it would be two weeks "before [he could] go back in there." Thereafter, Mr. Phillips did not see Dr. Clark. During two weeks following his discharge from the hospital Mr. Phillips went several times to the emergency room at the hospital. On several occasions, he was seen by Dr. Bishop who told him he would be all right. After the sutures were removed by Dr. Bishop, Mr. Phillips and his wife were concerned that the incision area had broken open. He was again seen by Dr. Bishop who told him to go home and that he would be all right. On the last trip to the hospital emergency room, October 1, 1982, Phillips testified that the wound was draining so much that he was "wet all over" and that his wife had to wrap him in towels because of drainage from the wound. A nurse told him the smell was bad and they needed to give him some antibiotics. Dr. Bishop told him to go home, "take a towel, keep it dried up and come back."

Relatives convinced Phillips to go to Baptist Medical Center in Little Rock where he was admitted and treated by Dr. Jones, a surgeon. Dr. Jones testified that it was not until some three or four days after Mr. Phillips' admission to Baptist Hospital that he became very ill with infection requiring further surgery and extensive treatment. Dr. Jones transferred Mr. Phillips to St. Vincent Hospital where the subsequent surgery was performed. Dr. Jones testified that he could think of nothing Dr. Bishop and Dr. Clark could have done for Mr. Phillips that they did not do. He did say, however, that after complicated gallbladder surgery he would personally see the patient. In response to the question, "You believe that would be standard, you'd uphold yours?" Dr. Jones answered, "Yes."

In addition to Dr. Jones, Dr. Gilbert Evans testified on behalf of Mr. Phillips. Dr. Evans testified he graduated from the University of Arkansas School of Medicine in 1957. While he had never performed gallbladder surgery, he had assisted in such operations. He had been an anesthesiologist. He had been a general practitioner and prison doctor and had worked in detoxifying drug patients. He said he had followed the post operative care of gallbladder surgery patients, but since 1983 he had limited his practice to disability evaluations. At first, Dr. Evans testified he was not familiar with medical practice standards in rural Arkansas in 1982, but then he said he was. He testified the post operative care given Phillips violated "first grade hygiene" principles. He testified that "blood work" should have been done, but was not, during the two week period Phillips was at home after the gallbladder surgery. He also said the bile lost through the tube could have been fed back to the patient. Dr. Evans testified he based his knowledge of Mr. Phillips's condition upon what Phillips had told him and that he refused to look at Mr. Phillips's medical records because he did not wish to be distracted from what Mr. Phillips had told him and because he was not paid his fee of $350 to look at them.

Throughout Dr. Evans's initial testimony, counsel for Dr. Clark and Dr. Bishop objected on the ground that there had been no showing that Dr. Evans was qualified to give an opinion with respect to the care afforded to Mr. Phillips by the defendants. The court did not then rule on the question whether Dr. Evans was qualified, but allowed Mr. Phillips's counsel to ask further questions in an attempt to ascertain whether or not he was qualified. The following excerpt of the testimony is typical:

Q [by Mr. Phillips's counsel] Dr. Evans, are you familiar with the standard of care for doctors in rural Arkansas, in the summer and fall of 1982?

A Yes.

MS. HENSLEY [counsel for Dr. Clark and Dr. Bishop]: Note my objection, the question was too broad and open.

THE COURT: That hasn't qualified him yet.

Q [by Mr. Phillips's counsel] You do know that this

operation was a gallbladder operation.

A Initially, yes.

MS. HENSLEY: I have to object again, that's not what it was.

THE COURT: I don't know, he says, I thought, it was a gallbladder operation with complications. I don't know whether we are dotting i's and crossing t's or not, that's what I understood it to be. If I'm in error, we ought to know.

MS. HENSLEY: I think Dr. Evans stated earlier, there's a big difference between a simple operation, where a gallbladder is removed, and an operation of the magnitude where there is a large mass, you have to redo ducts, all kinds of stuff. That's my objection.

Q [by Mr. Phillips's counsel] Dr. Evans, what we are talking about is the fourteen days after he was released from Conway County Hospital, in the summer of 1982.

Thereafter, in response to objections to Dr. Evans's testimony, the court's response was "Let's see what he's going to say." The court did not make a ruling during Dr. Evans's testimony on his qualifications to give his professional opinion.

During cross examination, Dr. Evans was asked to state all the things he thought Dr. Clark and Dr. Bishop had failed to do that they should have done for Mr. Phillips. His response was that they should have fed him and prayed for him. The reference to feeding the patient had to do with Dr. Evans's contention that Mr. Phillips became malnourished after the gallbladder surgery, although he testified that no one knows what proper nutrition is.

At the conclusion of the case, the court granted directed verdicts as to punitive damages and as to Dr. Clark, and then, with reference to the motion for directed verdict in favor of Dr. Bishop, the court stated:

> I have witnessed hundreds of trials and many malpractice cases, over the past twenty years, nearly twenty-one, and I don't think I have ever seen any case, no matter what size or consequence, in which the evidence was [s]o

incredible, unbelievable, as in this case. Dr. Evans is totally incredible, he smacks of a person who may be deranged, and I say that after considerable concern.

. . .

The only evidence that purports to show malpractice, professional evidence, was that of Dr. Evans, and, to be very candid, I don't think it's believable. He said, in his final statement, and I recall, when asked, "what did this doctor not do that he should have done," and he said he should have fed him and prayed for him. That's what he said, verbatim, and I just hold that's of such inconsequential reply in this case, that I'm going to grant the motion for verdict. I am embarrassed about the case.

While the court did not say specifically that he was, at last, ruling on Dr. Evans's qualifications to give expert testimony, we feel the court's remarks may be taken as such a ruling. The court has broad discretion to determine whether one qualifies as an expert, and we will not reverse the determination absent an abuse of discretion. *Dixon* v. *State*, 268 Ark. 471, 597 S.W.2d 77 (1980); *United States Fidelity & Guaranty Co.* v. *Smith*, 252 Ark. 556, 480 S.W.2d 129 (1972). *Cf. Cathey* v. *Williams*, 290 Ark. 189, 718 S.W.2d 98 (1986). Given Dr. Evans's equivocal testimony as to his qualifications and his equally equivocal statements as to what should have been done by the defendants, combined with his refusal or failure to review the relevant medical records in the case, we cannot say the court abused its discretion. We cannot say that this witness's testimony would, in the words of A.R.E. 702, have assisted the trier of fact to understand the evidence.

Mr. Phillips does not contest the fact that this is the type of medical malpractice case in which expert testimony is required. We agree with the court that, absent Dr. Evans's testimony there was nothing to support Mr. Phillips's allegations.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. According to the record Doctor Gilbert Evans qualified as an expert in the area concerned

in this lawsuit. He expressed an opinion that the appellees were guilty of malpractice in this case. That was enough to send the case to the jury.

It is not the function of this court to judge the credibility of the witnesses. That is the function of the fact finders. The majority opinion is established only upon the ground that this court values the words of some witnesses over others. I cannot go along with such reasoning.