Brigiette DUHON v. STATE of Arkansas

CR 89-21                                    774 S.W.2d 830

Supreme Court of Arkansas
Opinion delivered July 10, 1989
[Rehearing denied September 11, 1989.*]

504

*James DePriest* and *Griffin J. Stockley*, Central Ark. Legal Servs., for appellant.

*Frances E. Werner* and *Florence Roisman*, National Housing Law Project; and *Jean Turner Carter*, Legal Services of Arkansas, for amicus curiae National Housing Law Project.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

RICHARD A. REID, Special Chief Justice. This court has jurisdiction pursuant to Ark. Sup. Ct. Rule 29(1)(c) involving the interpretation or constitutionality of an act of the general assembly. The act in question is codified as Ark. Code Ann. § 18-16-101 (1987), which provides:

> Any person who shall rent any dwelling house or other building or any land situated in the State of Arkansas and who shall refuse or fail to pay the rent therefor when due according to contract shall at once forfeit all right to longer occupy the dwelling house or other building or land.

> If, after ten (10) days' notice in writing shall have been given by the landlord or his agent or attorney to the tenant to vacate the dwelling house or other building or land, the tenant shall willfully refuse to vacate and surrender the possession of the premises to the landlord or his agent or attorney, the tenant shall be guilty of a misdemeanor. Upon conviction before any justice of the peace or other court of competent jurisdiction in the county where the premises are situated, the tenant shall be fined in any sum not less than one dollars ($1.00) nor more than twenty-five dollars ($25.00) for each offense. Each day the tenant shall willfully and unnecessarily hold the dwelling house or other building or land after the expiration of notice to vacate shall constitute a separate offense.

Brigiette Duhon entered into a rental agreement on November 30, 1987, with Century Twenty-one Jim Gwatney Realty to

rent a residence in Jacksonville, Arkansas, beginning December 1, 1987. Rent of $425.00 was due each month on the first and to be paid no later than the fifth. Initially, $300.00 was paid, $200.00 of which was a security deposit and $100.00 to be applied to the December rent.

On January 13, 1988, most of the remainder of December rent was received. On January 29, 1988, $200.00 was paid toward the January rent. On February 12, 1988, $398.50 was also received, which meant the appellant was then over $300.00 in arrears.

After advising the appellant that if she did not keep her rent paid it was going to be necessary to evict her, Jim Gwatney personally served a notice to vacate, which was acknowledged by the appellant. The notice demanded that the premises be surrendered on or before ten days from service and receipt of the notice. Appellant contended that, following receipt of the notice, she attempted to pay.

On March 4, 1988, appellant was charged in the Jacksonville Municipal Court with violating the section of the Arkansas Code we have cited. She was convicted and fined $1,625.00.

An appeal was taken to Pulaski County Circuit Court. Appellant's motion for recusal of the judge because of remarks made during the plea and arraignment was denied as well as her motion for a declaratory judgment contending the act was unconstitutional as being in violation of the due process clauses of both the United States and Arkansas Constitutions. The court also denied a motion for dismissal on the theory of waiver. During the trial the court refused to allow the testimony of Dr. Charles Chastain as an expert and to admit testimony from the municipal court record regarding statistics.

Appellant was convicted on September 27, 1988. Sentencing was postponed until October 25, 1988, at which time it was determined that appellant had refused to vacate the property for sixty days following service of the notice to vacate.

The court found at that time that the appellant was unable to pay and determined the appellant's obligation to be $600.00 at $10.00 a day for each day she held over. She was sentenced to thirty days in jail.

Appellant attacks her conviction by raising seven separate points, three of which concern the constitutionality of Ark. Code Ann. § 18-16-101. We will address all of them.

It is alleged the court erred by failing to admit testimony of Dr. Charles Chastain, who is Chairman of the Criminal Justice Department of the University of Arkansas at Little Rock. Dr. Chastain's testimony was proffered into the record. He was offered as an expert to state his opinion regarding the constitutionality of the act in question and to recite statistical data he had gathered from municipal court records in Little Rock as to how charges under this act were handled. The trial court ruled that this data, as part of the municipal court transcript, was not relevant and that Dr. Chastain should not be allowed to testify as to the constitutionality of the act in question. We agree.

■ Testimony and statistics from a municipal court are of no consequence to a circuit court. Cases are tried *de novo* upon appeal from municipal court to circuit court. Ark. Code Ann. § 16-96-507 (1987).

■ The constitutionality of an act is ultimately to be determined by this court. Dr. Chastain's testimony gathered from statistics and his general feeling do not appear to be such as would assist the trial court in understanding the evidence or determining a fact in issue as set forth in A.R.E. Rule 702.

■ The determination of the qualification of an expert witness lies within the discretion of the trial court, and we will not reverse unless that discretion has been abused. *Phillips* v. *Clark*, 297 Ark. 16, 759 S.W.2d 207 (1988). We find that the trial court did not abuse its discretion in this regard.

The trial court was also correct in denying appellant's motion to dismiss based upon the theory of waiver as a defense to the lease contract.

■ The entire length of this transaction was less than three months from the inception of the lease term to the time the notice to vacate was served upon and received by the appellant. There is no dispute that appellant was in arrears when the notice was served upon her. There is no dispute that she never paid the rent on time. There is no dispute that appellant was advised that, if she did not keep her rent paid on time, it would be necessary to evict

her. If we also consider the appellant's testimony that she attempted to pay rent after the service of notice upon her and it was refused, then holding over for 60 days clearly established that the appellant willfully refused to vacate. Appellant did not establish that there existed a settled course of dealing whereby the rent was accepted late without warning or notice objecting to the arrearage or late payments, which is necessary to establish a waiver. *Duncan* v. *Malcomb*, 234 Ark. 146, 351 S.W.2d 419 (1961).

Next, appellant contends the act under which she was convicted is unconstitutional because (1) it denies her due process of law under the authority of *Matthews* v. *Eldridge*, 424 U.S. 319 (1976); (2) it is not the least restrictive method available to advance the purpose of the act; and (3) it does not bear a substantial relationship to an end which promotes the public health, safety or welfare, thereby violating due process guarantees of article 2, § 8 of the Arkansas Constitution and Fourteenth Amendment of the United States Constitution.

All legislation is presumed to be constitutionally valid. *Price* v. *State*, 285 Ark. 148, 685 S.W.2d 506 (1985). All doubt is resolved in favor of constitutionality. *Phillips* v. *Giddings*, 278 Ark. 368, 646 S.W.2d 1 (1983). A party challenging a statute has the burden of proving it unconstitutional. *Holland* v. *Willis*, 293 Ark. 518, 739 S.W.2d 529 (1987). We are not convinced by the arguments or authorities presented by the appellant that the act is unconstitutional under any of the theories presented.

*Mathews* v. *Eldridge*, 424 U.S. 319 (1976), involved a constitutional challenge to the administrative procedures established by the Secretary of Health, Education and Welfare for assessing whether a continuing disability existed. It was contended that the plaintiff's right to procedural due process was abridged. Justice Powell, in writing the opinion upholding the procedures involved, said that, prior to the termination of Social Security benefits, the recipient need not be afforded an opportunity for an evidentiary hearing.

The *Mathews* case involved procedural due process and a person's right to a hearing before he is deprived of a property interest. Ark. Code Ann. § 18-16-101 requires a ten day notice

and a hearing to determine whether the party charged "willfully refused" to vacate. The appellant's right to procedural due process has not been abridged in this case.

In contending the act in question is unconstitutional because it is not the least restrictive method available, appellant cites *Thompson* v. *Arkansas Social Services*, 282 Ark. 369, 669 S.W.2d 878 (1984), and *Shelton* v. *Tucker*, 364 U.S. 479 (1960). The *Thompson* case involved the constitutionality of statutes listing conditions which permit the termination of parental rights. The court discussed only the vagueness of the statute involved and did not define or discuss what was meant by the least restrictive method available. In *Shelton*, the Supreme Court considered an Arkansas act that required teachers to submit an affidavit listing all organizations to which they belonged for the past five years. This act was held to interfere with the associational freedom of teachers far beyond what might be justified in the exercise of the state's legitimate inquiry into the fitness and competency of its teachers. The court said a legitimate purpose cannot be pursued by means that broadly stifle fundamental liberties when the end can be more narrowly achieved.

We are not concerned in our case with a fundamental liberty as the court was in *Shelton*. Appellant asks us to apply this principle because we have a civil remedy as well as a criminal act. Most criminal acts also have civil counterparts. For example, all thefts, §§ 5-36-103 to 518; all batteries, §§ 5-13-201 to 203; criminal non-support, § 5-26-401, and numerous others.

The case of *Munson* v. *Gilliam*, 543 F.2d 48 (8th Cir. 1976), did not deal directly with the act's constitutionality. The court found, however, that the act did not circumvent the civil statute or put a "chilling effect" on a tenant's right to assert defenses or force a tenant to risk criminal conviction and fine as a result of what he may have considered to be a justified refusal to pay rent. The court said, and we agree, that Arkansas law allows for any civil defense to be asserted in the criminal proceeding and that criminal prosecution, where a tenant, without justification, fails to pay rent, is permissible under the Arkansas Constitution.

Appellant's third contention regarding the constitutionality of the act involves basically whether Ark. Code Ann. § 18-16-101 (1987) is a valid exercise of the police power of this

state. This same argument was made in *Poole* v. *State*, 244 Ark. 1222, 428 S.W.2d 628 (1968). There we specifically held this act constitutional as a valid exercise of the state's police power. A careful review of all the cases and arguments made by the appellant fails to convince us otherwise.

Appellant argues that *Greene* v. *Lindsey*, 456 U.S. 442 (1982), and *Gorman* v. *Ratliff*, 289 Ark. 332, 712 S.W.2d 888 (1986), clearly show the property rights of a tenant have changed and for this reason the *Poole* case should be overturned. The *Greene* case held that posting a notice to vacate on a tenant's door did not constitute sufficient notice and was violative of due process. The *Gorman* case outlawed the use of self-help measures to regain property. The landlord had entered the property without any notice and removed the tenant's property. We have no argument with the principles advanced in these cases or the interests of the tenants they protect. We do not, however, feel they overcome the presumption of constitutionality. The mere fact that § 18-16-101 is unique or may not be prosecuted in a manner which appellant argues is proper does not overcome its presumption of validity. In the 1924 decision of *Replogle* v. *Little Rock*, 166 Ark. 617, 267 S.W. 353 (1924), cited by the appellant, the court said:

> Constitutionality of an act must be tested not by what has been done under it, but by the power to act which it actually grants.

A tenant wrongfully prosecuted under this act has a remedy and a landlord wrongfully utilizing this criminal act to evict tenants should be aware to the possible consequences. In *Parker* v. *Brush*, 276 Ark. 437, 637 S.W.2d 539 (1982), an action for malicious prosecution resulted in compensatory damages of $5,000.00 and punitive damages of $7,500.00 against a landlord.

Appellant moved that the trial judge recuse himself because of comments made during the plea and arraignment and asks us to transfer the case should it be remanded. Although we are not remanding the case for a new trial, some comment should be made.

At the plea and arraignment of appellant, after being advised that the attorneys for the appellant planned to attack the

constitutionality of the act, the trial judge made a comment that was unnecessary and improper. He said, "We haven't got time for—I'm not interested in paying Legal Services my tax money to make all this constitutional stuff."

A court proceeding in all its phases must not only be fair and impartial but must appear to be fair and impartial. *Burrows* v. *Forrest City*, 260 Ark. 712, 543 S.W.2d 488 (1976). This remark could have been interpreted to mean the court would not consider a constitutional argument, and it should not have been said.

We do agree with the appellant that the court erred in convicting her on sixty counts. Each day the tenant willfully and unnecessarily held the premises could have been considered a separate offense for which a fine of not less than $1.00 nor more than $25.00 per offense could have been imposed. But appellant was only charged with one count. At the time of trial the appellant was not occupying the premises and the prosecutor could have determined the number of days or the separate offenses involved.

We also find the court erred in imposing a sentence of 30 days imprisonment. While Ark. Code Ann. § 5-1-107(a)(2) (1987) states an offense is a misdemeanor if it is so designated by a statute that is not a part of the criminal code and § 5-1-107(c) provides that such a statute with no limitations on a sentence to imprisonment is a class A misdemeanor, an exception is provided by Ark. Code Ann. § 5-1-108(b):

> Regardless of any designation appearing in the statute defining an offense, an offense is a violation for purposes of this code if the statute defining the offense provides that no sentence other than a fine, or fine or forfeiture, or civil penalty is authorized upon conviction.

Therefore, the appellant's offense is classified as a violation and she is subject to punishment only in accordance with the limitations of Ark. Code Ann. § 18-16-101. *See* Ark. Code Ann. § 5-4-201(c)(2) (1987).

The appellant's conviction is affirmed, but because she was charged with only one count, we modify her sentence to a fine of $25.00.

Affirmed as modified.

512

HOLT, C.J., and HAYS, J., not participating.

H. MURRAY CLAYCOMB, Special Justice, joins in the opinion.

HICKMAN and PURTLE, JJ., dissent.

GLAZE, J., concurs.

JOHN I. PURTLE, Justice, dissenting. Arkansas has won another distinction: it is the only state in the nation which imposes criminal sanctions on a person who does not pay his rent on time. When we handed down *Gorman* v. *Ratliff*, 289 Ark. 332, 712 S.W.2d 888 (1986), I was of the opinion that we were joining the rest of the country in rendering an enlightened decision on the relationship between landlord and tenant. I was mistaken. The majority has, with all the speed of a crawfish, backed into the 19th century.

The appellant was pulled out of her bed on March 3, 1988, and taken to the jail in Jacksonville because she had not paid her rent. She had agreed to pay rent in the amount of $425.00 per month. Possession was taken on December 1, 1987, at which time she was given a $50.00 credit for cleaning up the place before moving in. She paid $300.00 in cash. Subsequent payments of $300, $200, and $398.50 were paid. Given credit for the $50.00, she has paid a total of $1248.50, which is $26.50 short of three months rent. On the 15th of February, 1988, before the third month was up, she was given written notice to vacate. If her occupancy had ended on that date, she had overpaid her rent. I am aware that the landlord's agent claimed $200.00 of the amount paid was for a security deposit. However, it was never refunded. The facts of this case do not convince me that the appellant failed to pay her rent without justification.

The constitutionality of Ark. Code Ann. § 18-16-101 (1987) is ripe for adjudication. *Gorman* was decided with contemporary reasoning. There we rejected forcible self-help, but we did not sanction criminal penalties for failure to pay a debt. According to the preamble to the act, the provisions of Ark. Code Ann. § 18-16-101 were clearly designed to assist landlords in cities and towns. (The reason landlords outside cities, towns and villages were not in need of assistance is not explained.) I believe the present decision is contrary to the theme of the *Gorman* opinion, which

was "to compel people 'to the more pacific course of suits in courts, where the weak and strong stand upon equal terms.' " *Gorman* continued: "This concept has evolved until now the modern doctrine requires a landlord, otherwise entitled to possession, upon the refusal of the tenant to surrender the leased premises, to 'resort to the remedy given by law to secure it.' " The *Gorman* decision interpreted Act 615 of 1981, Ark. Code Ann. § 18-60-301 et seq. (1987), concerning forcible entry and detainer and unlawful detainer, as evincing a desire by the legislature to extend additional protection to parties in possession of property before that property could be taken from them. We stated that the act also provided procedures to expedite the removal of the parties who are unlawfully in possession of property.

Practically all jurisdictions have recognized that a renter or lessee has a property interest in the premises. A holdover tenant, whether by written lease or oral agreement, is no longer considered a trespasser by the enlightened courts of the nation. The constitutionality of Ark. Code Ann. § 18-16-101 was clearly challenged in the trial court. In *Green* v. *Lindsey*, 456 U.S. 442 (1982), the United States Supreme Court stated:

> In this case, appellees have been deprived of a significant interest in property: indeed, of the right to continue residence in their homes.

The *Green* case involved the sufficiency of notice to vacate. The tenant had questioned the validity of posting a notice on the door.

Due Process and Equal Protection are not the property of any one group of people, but are the rights of all citizens. In the present case the state has simply lent her hands to landlords by enacting this 1901 statute. It criminalizes a breach of contract for failure to pay a debt. Criminal sanctions should be as applicable to property line disputes and other breaches of contract as to agreements between landlord and tenant. The weak and the strong do not stand upon "equal terms" when the state is on the side of one or the other.

Finally, I wish to concur with the majority on finding that the court prejudicially and erroneously imposed imprisonment of 30 days upon the appellant. It was benevolent of the majority to reduce the penalty to one day.

Hickman, J., joins.