The Honorable Jodie Mahony State Representative 106 West Main Street, Suite 406 El Dorado, AR 71730-5637
Dear Representative Mahony:
I am writing in response to your request for an opinion, presented during your term as state representative, on the following question:
 Does the installation and use of the product known as "RADOAR" (Rent Accountabilities Device of Arkansas), which would enable a landlord to cut off utility service in the event of nonpayment of rent, violate any existing Arkansas laws?
The inventor of the device has attached for my review a draft document captioned "RADOAR Lease Addendum," which includes a provision purportedly waiving any lessee's "rights of claim for constructive eviction due to the interruption of use of the home[']s electrical components" in the event of a delinquency in the payment of rent.
It is unclear in your question whether the landlord or the tenant would be party to a contract with the utility company.
RESPONSE
In my opinion, although the law would benefit by legislative clarification, I doubt that a reviewing court would consider the "self-help" procedure described in your request to be consistent with Arkansas law. I believe the legislature in all likelihood intended the statutory remedies for non-payment of rent as set forth in the Code to be exclusive.
The Arkansas Code contains several subchapters that address the remedies a lessor might pursue when a lessee becomes delinquent in the payment of rent. One deals with forcible entry and unlawful detainer and is codified at A.C.A. §§ 18-60-301 through -312 (Repl. 2003 Supp. 2005). Specifically, A.C.A. § 18-60-304(3) provides that a lessee will be guilty of an unlawful detainer if he or she fails to pay rent when due and refuses to surrender possession of the property after three days' notice to vacate. Section 18-60-307 further sets forth the procedure whereby a lessor might obtain a writ of possession by an action in circuit court. Section 18-60-309 authorizes the court to assess damages in the amount of any rent delinquency plus costs.
Complementing the subchapter just discussed is the subchapter codified at A.C.A. §§ 18-16-101 through -110 (Repl. 2003 Supp. 2005), which affords a lessor both criminal and civil remedies in the event a lessee refuses to pay rent and/or surrender possession of the premises. Specifically, A.C.A. § 18-16-101 provides that a tenant who is delinquent in rent and refuses to vacate the premises after 10 days' notice may be adjudged guilty of a Class B misdemeanor and be subject to a fine in the amount of $25.00 per day in addition to the amount of overdue rent.
With respect to a tenant's right of quiet enjoyment in his leased premises, A.C.A. § 18-60-303 provides:
A person shall be guilty of a forcible entry and detainer within the meaning of this subchapter if the person shall:
 (1) Enter into or upon any lands, tenements, or other possessions and detain or hold them without right or claim to title;
 (2) Enter by breaking open the doors and windows or other parts of the house, whether any person is in it or not;
 (3) Threaten to kill, maim, or beat the party in possession or use words and actions as have a natural tendency to excite fear or apprehension of danger;
 (4) Put out of doors or carry away the goods of the party in possession; or
 (5) Enter peaceably and then turning out by force or frightening by threats or other circumstances of terror the party to yield possession.
Although I have found no Arkansas case law directly addressing the enforceability of a lease agreement purportedly permitting an aggrieved landlord to shut off a rent-delinquent tenant's utility services, I believe the situation you propose invites comparison to that at issue inGorman v. Ratliff, 289 Ark. 332, 712 S.W.2d 888 (1986). The dispute inGorman arose from a landlord's entry, pursuant to the provisions of a lease, into the premises of an admittedly rent-delinquent tenant who had refused to vacate upon demand to do so. The landlord seized the premises and confiscated the tenant's personal property. The trial court ruled that, pursuant to the lease, the landlord had the right to peacefully repossess the premises and confiscate the property in accordance with his purported contractual lien. Id. at 334.
The Arkansas Supreme Court reversed the trial court, applying as follows the unlawful detainer statute now codified at A.C.A. §18-60-303:
 Included in this list [of proscribed remedies] is the action taken by the landlord in this case: "carrying away the goods of the party in possession." Appellee asks us to read this statute as prohibiting only people "without right or claim to title" from carrying away the goods of the party in possession. We do not find his position persuasive however. In this statute, the legislature has embodied guidelines of prohibited conduct, any one of which constitutes a forcible entry and detainer within the meaning of the Act, thus giving protection to appellants.
Id. at 336.
Although it might be argued that terminating a tenant's utility services does not amount to "carrying away the goods of the party in possession," thus rendering the unlawful detainer statute inapplicable, I do not believe this conclusion is foregone, particularly if the utility services are provided in the tenant's name. I am struck by the fact that the court in Gorman verged on declaring that any self-help remedy for failure to pay rent is foreclosed in light of the judicial remedy provided in Acts 1981, No. 615, which is currently codified at A.C.A. §§ 18-60-304 and -307. Specifically, the court observed:
 No entry by a landlord onto property occupied by another is given by Act 615, except by first resorting to legal process. Accordingly, self-help action is prohibited.
 This finding is in keeping with the long standing policy behind the forcible entry and detainer statutes, which were first enacted to prevent landlords from retaking their land by force. Vinson v. Flynn, 64 Ark. 453 (1897). The statutes were designed to restore possession to the tenant until the right to possession could be adjudicated and to compel people "to the more pacific course of suits in court, where the weak and strong stand upon equal terms." Id., quoting Littell v. Grady, 38 Ark. 584; see also 35 Am.Jur.2d Forcible Entry Detainer § 5 p. 894 (1967). This concept has evolved until now the modern doctrine requires a landlord, otherwise entitled to possession, upon the refusal of the tenant to surrender the leased premises, to "resort to the remedy given by law to secure it." 50 Am. Jr. 2d Landlord Tenant 1220 p. 104 (1970); Annotation, 6 A.L.R. 3d 177 5 (1966).
289 Ark. at 337 (emphasis added). Given these policy considerations, the court concluded that the parties to a lease could not by contract waive the proscription against self-help remedies involving a forcible entry.Id.
In the wake of Gorman, the court has on several occasions stated in the broadest of terms its position on self-help provisions contained in lease contracts. For instance, in McCrory v. Johnson, 296 Ark. 231, 243,755 S.W.2d 566 (1988) — a case that involved, inter alia, the validity of a lease provision purportedly authorizing the lessor of a defaulting tenant to "re-enter the premises [and] remove all persons therefrom" and imposing a lien on all property within the premises during the period while rent was in arrears — the court offered the following blanket summation of its holding in Gorman:
 In Gorman v. Ratliff, 289 Ark. 332, 712 S.W.2d 888 (1986), we held that lease provisions authorizing self-help by a landlord are illegal and invalid.
Similarly, in Duhon v. State, 299 Ark. 503, 510, 774 S.W.2d 830 (1989) — a case that rejected a challenge to the constitutionality of A.C.A. § 18-16-101, which allows a landlord to pursue criminal remedies against a defaulting tenant who refuses to vacate the premises — the court tersely summarized its holding in Gorman as follows:
 The Gorman case outlawed the use of self-help measures to regain property.
Admittedly, neither McCrory nor Duhon involved self help of the sort at issue in your request — namely, a significant but non-forcible interference by a landlord with a delinquent tenant's quiet enjoyment of the premises. Narrowly read, the court's ruling in Gorman may appear not to reach contractual provisions purportedly authorizing such a remedy, being restricted instead only to provisions purporting to authorize forcible entry and the seizure of a tenant's property. On the other hand, the subsequent summations of the Gorman decision by the court inMcCrory and Duhon might support a different conclusion, instead suggesting that any self-help provision in a lease will be anathema.
In an analysis with which I concur, one commentator has summarized the possible scope of the Gorman decision as follows:
 The opinion in Gorman emphasized that Act 615 reflects a public policy favoring invalidation of lease provisions that authorize a landlord to enter and take personal belongings absent resort to lawful process. On a broader level, the court concluded that since the Act does not give the landlord the right to enter until he has resorted to legal process, self-help action is prohibited. The probable effect of this decision is to invalidate any attempt by landlords to circumvent the statute. Even in the absence of forceful entry, in padlocking for example, it is likely that the court would extend the reasoning of Gorman to reach such a situation; the emphasis is no longer on force.
 * * * The majority opinion also relied on Act 615, which added a due process notice requirement and an additional procedural hearing to prohibit landlord self-help. The court's interpretation of legislative intent is consistent with the modern trend which clearly favors protecting the party in possession, even absent force.
 * * * Existing concurrently with the statutory protections for tenants, the landlord has a clearly delineated civil method for judicial removal of holdover tenants. The landlord also has a judicial procedure to prosecute tenants holding over after a ten-day notice. . . . Either method will be likely to serve the landlord's ends of encouraging delinquent tenants to vacate or pay the rent to avoid the threatened judicial procedure.
Renee Sims Dale, Landlord — Tenant — Forcible Entry and Detainer— Statutory Prohibition of Landlord Self-Help Remedies, 9 U.A.L.R. L.J. 683, 696-98 (1986-87) (footnotes omitted).
This commentary broadly reads Gorman as prohibiting any recourse to self-help by a landlord as an alternative to seeking expedited relief through the courts. See Ark. Op. Att'y Gen. No. 90-180 ("[T]he Arkansas Supreme Court has expressed approval of a growing trend which forbids the use of methods other than judicial process in order for a landlord to regain possession of leased premises.").[1] The facts inGorman are admittedly distinguishable from those set forth in your request in that an intentional cutting-off of another's utility service is not the equivalent of entering his home and summarily dispossessing him of his residence. However, any such cut-off of essential services might well be interpreted as coercive to an extent that violates the spirit of Gorman, which attributes to the legislature an intent to have courts promptly and exclusively resolve landlord/tenant rental disputes. In my opinion, a court faced with the issue might well declare invalid any lease provision purporting to authorize a landlord to exercise such a drastic remedy.
Finally, I should note that Gorman in some respects marks a departure from previous case law that might be read as permitting a contractual provision of the sort at issue in your request. For instance, inDupree v. Worthen Bank Trust Co., 260 Ark. 673, 675, 543 S.W.2d 465
(1976), the court held that "in the absence of language to the contrary" every lease contains an implied covenant of quiet enjoyment.[2]Accord, Trace X, supra at 474. Implicit in the quoted language is a suggestion that a lessee might contractually waive the covenant of quiet enjoyment, thereby possibly authorizing self-help measures of the sort at issue in Gorman and in your request. In the wake of Gorman, I strongly question whether the quoted language might still justify self-help measures, if it ever did. Although it may be that a lessee can contract away some aspects of the covenant of quiet enjoyment, I do not believe this extends to the point of authorizing a landlord to engage in self-help measures against a tenant who is delinquent in rent. However, legislative or judicial clarification on this point would appear to be warranted.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] I should note that this tenant-friendly shift in attitude toward tenants is not apparent in all Arkansas law. For instance, A.C.A. §18-16-110 (Supp 2005), which was enacted pursuant to Acts 2005, No. 928, § 2, absolves landlords of any liability for personal injuries sustained by individuals as the result of defects or disrepair in the rented premises. Section 1 of Act 928 acknowledges the existence of two Arkansas Supreme Court opinions, Thomas v. Stewart, 347 Ark. 33, 60
S.W.3d 415 (2001) and Propst v. McNeill, 326 Ark. 623, 932 S.W.2d 766
(1996), that applied the common-law doctrine of "lessee emptor" ("lessee beware"), which absolved landlords of any legal consequences for deficiencies in leased premises, but invited the legislature to change the doctrine to favor lessees. The General Assembly declined the invitation and instead expressly endorsed and adopted the common-law doctrine. Arkansas is one of only four states that still subscribe to this common-law principle, which has its roots in feudal law.See Stephen J. Maddex, Note, Propst v. McNeill: Arkansas Landlord-TenantLaw, A Time for Change, 51 Ark. L. Rev. 575 (1998).
[2] In Trace X Chemical, Inc. v. Highland Resources, Inc.,265 Ark. 468, 473-74, 579 S.W.2d 89 (1979), the court offered the following remarks regarding the doctrines of quiet enjoyment and constructive eviction:
 The concepts of constructive eviction and breach of the covenant for quiet enjoyment are very closely related, if not just different names for the same concept. An excellent discussion of the relationship between the covenant of quiet enjoyment and constructive eviction can be found in Reste Realty Corp. v. Cooper, 53 N.J. 444, 251 A.2d 268 (1969). Portions of that discussion follow:
 The great weight of authority throughout the country is to the effect that ordinarily a covenant of quiet enjoyment is implied in a lease [Citations omitted.] . . . Where there is such a covenant, whether express or implied, and it is breached substantially by the landlord, the courts have applied the doctrine of constructive eviction as a remedy for the tenant. Under this rule any act or omission of the landlord or of anyone who acts under authority or legal right for the landlord, or of someone having a superior title to that of the landlord, which renders the premises substantially unsuitable for the purpose for which they are leased, or which seriously interferes with the beneficial enjoyment of the premises, is a breach of the covenant of quiet enjoyment and constitutes a constructive eviction of the tenant.
The court went on to note that irrespective of the landlord's conduct, no breach of the covenant of quiet enjoyment or constructive eviction can occur if the lessee retains possession of the premises. Id. at 474.